## The City of Chicago v. Mutual Electric Light and Power Co. and Hyde Park Electric Light and Power Co.

1. ELECTRIC LIGHT COMPANIES—*Power of the Hyde Park Co.*— The Hyde Park Electric Light and Power Company has no authority under the ordinances of the village of Hyde Park, from which it derives its only grant of power, to furnish either electric light, heat or power outside of the limits of the village.

2. SAME—*Permit of the Commissioner of the Board of Public Works.* —The permit of the commissioner of the Board of Public Works of the city of Chicago (the successor of the village of Hyde Park), to string wires on poles outside of those limits, is powerless to extend the grant of the Hyde Park Electric Light and Power Company.

3. SAME—*The Essence of the Grant.*—The right to furnish and transmit electricity is the essence of the grant to an Electric Light and Power Company. That alone is the public and useful end to be subserved. The poles, conduits and strung wires are merely means to attain the useful end accomplished by transmitted electricity.

4. SAME—*Grants Not to be Extended by Implication.*—The mere permission to string wires may or may not, according to circumstances, be within the control and permission of the executive officers of a village or city, but the right to transmit and supply light, heat and power by the powerful agency of electricity, over the streets and public grounds of a village or city, rests peculiarly and exclusively in a legislative grant, and such grants will never be extended from what is expressed, except by necessary implication.

5. FRANCHISES—*Granted by Municipalities Not to be Extended by Implication.*—The limits of franchises granted by municipalities are not to be extended by doubtful implication. Public policy, as well as contractual relations between corporations holding such franchises, and the municipalities, are violated by such extension, and the officers of the municipality, acting under orders from the authorities, are justified in preventing such extensions by force.

**Memorandum.**—In chancery. Appeal from the Circuit Court of Cook County; the Hon. OLIVER H. HORTON, Judge, presiding. Bill of the

Mutual Electric Light and Power Company against the City of Chicago, John P. Hopkins, the Chicago City Railway Company and the Hyde Park Electric Light and Power Company; hearing and decree for an injunction on the cross-bill of the Hyde Park Electric Light and Power Company; appeal by the City of Chicago. Heard in this court at the October term, 1894. Reversed and remanded with directions, etc. Opinion filed December 6, 1894.

APPELLANT'S BRIEF, GEORGE W. SMITH, ATTORNEY, HARRY RUBENS, CORPORATION COUNSEL.

An unlawful use or obstruction to public streets may be suppressed. King v. Davenport, 98 Ill. 305.

Courts will interfere with the exercise of municipal authority in rare instances only. Chic. Mun. G. L. Co. v. Town of Lake, 130 Ill. 42.

A court of equity has no power, before the final hearing, or otherwise than by a decree, to order a party to undo what he has done. 1 Spelling Ex. Relief, Sec. 3.

The office of an interlocutory injunction is to interpose such restraint as is necessary to prevent further infliction of the mischief complained of and preserve matters in *statu quo*. In issuing a temporary injunction the court will in no manner anticipate the ultimate result of the questions of right involved. Spelling, Sec. 10; Wangelin v. Goe, 50 Ill. 459; Menard v. Hood, 68 Ill. 121; Fisher v. Board of Trade of Chicago, 80 Ill. 85; Baxter v. Board of Trade of Chicago, 83 Ill. 146; L. S. & M. S. R. R. Co. v. Taylor, 134 Ill. 603.

An interlocutory injunction does not go to the extent of ordering undone what has been already done; if allowed to be employed for that purpose, it might thereby be productive of as much injury to defendant as that of which the aggrieved party complains. Spelling, Sec. 31.

SNAPP & BRECKENRIDGE, attorneys for appellee, The Mutual Electric Light & Power Co.; ARTHUR D. RICH of counsel.

BRIEF OF MANN, HAYES & MILLER, ATTORNEYS FOR APPELLEE, HYDE PARK ELECTRIC LIGHT & POWER CO.

" An injunction will often be granted to restrain a party from deciding for himself a question involving controverted

rights, and to compel him to resort to the courts, and this without regard to the absolute merits of the controversy. It is enough that there is a controversy to justify a court of equity in directing that it be settled by legal proceedings." Eckelkamp v. Schroeder, 45 Mo. 505; Varick v. N. Y., 4 John. Ch. (N. Y.) 53; Dudley v. Trustees, 12 B. Mon. (Ky.) 610; Farmers v. Reno, 53 Pa. St. 224; Lunsing v. Steamboat Co., 7 John. Ch. (N. Y.) 162.

Appellant can not dispute the rule of law that the granting of a temporary injunction is a matter addressed to the sound discretion of the chancellor. Marble v. Benhotel, 35 Ill. 240; Poyer v. Village of Desplaines, 20 Ill. App. 30.

As to the granting of a temporary injunction in this particular case, and the rule adopted under similar state of facts see Atlantic & Pacific Telegraph Co. v. U. P. Ry. Co., 1 Fed. Rep. 745.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

The Mutual Electric Light and Power Company exhibited its bill for injunction against the appellant, and in the same suit the Hyde Park Electric Light and Power Company, which was a defendant to the original bill, filed its cross-bill, also for an injunction against the appellant.

In accordance with the prayers of both bill and cross-bill a temporary injunction order was granted on each. The effect of such orders was to restrain the appellant, its officers and agents, from interfering with the complainant and cross-complainant in repairing and stringing certain electric wires which had been cut by direction of appellant's officers.

The order of injunction entered upon the cross-bill of the Hyde Park Company is the only one that is before us, for the reason, if no other, that the transcript of the record was not filed in this court within sixty days from the entry of the order in favor of the Mutual Company. Chap. 70, Sec. 24, Rev. Stat., entitled "Injunctions."

The Hyde Park Electric Light and Power Company was incorporated in 1888, for the purpose of furnishing electric light and power to the inhabitants of the village of Hyde

Park, and in 1889, prior to the annexation of that village to the city of Chicago, it was by ordinance given authority to erect and operate a plant for the transmission of electric light, power and heat, in, through, or over the streets, alleys and public grounds of said village.

At that time the western boundary of the village of Hyde Park was the center line of State street, south of 39th street, and therefore, under the ordinance, the Hyde Park Company had authority to extend and lay its wires from the east to the center of State street. The annexation of the village of Hyde Park to the city of Chicago did not impair the rights of the Hyde Park Company.

The Mutual Electric Light and Power Company was incorporated March 28, 1893, for the purpose of furnishing electric light and power to the people of Chicago, and by an ordinance of the city of Chicago, passed March 19, 1894, it was given permission and authority to erect and operate a plant for the transmission of electric light, power and heat, in and over the streets, alleys, and public ways of that part of the city of Chicago lying south of 39th street and west of the center line of State street.

It will thus be seen that the Hyde Park Company was authorized to put up wires to the center line of State street from the east, and the Mutual Company to put up wires to the same center line of State street from the west. The distance south from 39th street to the city limits is about a dozen miles along State street, and throughout that entire length the territories of the two companies adjoin each other.

By the terms of its ordinance or contract with the city, the Mutual Company bound itself to, within one year from the passage of the ordinance, erect and have ready for operation a plant, to cost not less than forty thousand dollars, and to have a capacity of furnishing electric light for not less than 350 arc lights, and if it failed so to do, then to pay to the city ten thousand dollars as liquidated damages.

Being so situated to each other, and the Hyde Park Company having its power house and electric generating ma-

chinery in operation and the Mutual Company being without a power house or electric generating capacity, and the wires of the two companies coming to State street, those of one company from the east and the other company from the west, the two companies on June 7, 1894, contracted together in writing, as shown by the abstract of record, as follows:

" The Hyde Park Electric Light and Power Company agrees to furnish and the Mutual Electric Light and Power Company agrees to receive electric current of the constant current variety at such points in Chicago lying along the line of State street, adjacent to the territory covered by the present franchise of the Mutual Company, as may be hereafter mutually agreed upon, at $5 per month for each 400 Watt months of energy furnished, provided the Watts furnished shall not be less than 60,000 Watts months, nor more than 100,000 Watts months for each calendar month.

The party of the first part is to furnish, and second part to receive, not less than 60,000 Watt months of energy each month for the period of eight months (and as much longer as may be agreed upon by the parties hereto).

While this contract is in force A. D. Rich shall be the treasurer of said second party and shall receive all money due second party, and shall pay over to first party promptly on the 15th of each month the amount due it for electric current supplied during the preceding month. In case of failure of second party to pay, first party authorized to discontinue the supply of electric current.

The conditions hereof shall at all times be subject to the laws, rules and regulations, permission and restrictions of the city of Chicago.

In case of failure on the part of the second party to pay or perform, first party may, at its option, determine contract."

On June 13, 1894, a permit by the commissioner of public works to string wires on certain poles belonging to the City Railway Company, with the consent of that company, on 61st street from State street west to Wentworth avenue,

and so on, was given to the Mutual Company; and on July 2, 1894, a like permit was given to the Hyde Park Company to string wires on poles on the south side of 61st street from State street eastwardly to South Park avenue, and on the east side of State street from 61st to 60th street, and eastwardly on the south side of 60th street from State street to South Park avenue, and so on.

It will thus be seen that under the two permits the wires of the respective companies were authorized to be strung to the junction of State and 61st streets, one from the West and the other from the east.

The strict letter of the permit to the Hyde Park Company confined its right to string wires on State street on the east side thereof, and the permit to the Mutual Company was to string wires " from State street to Wentworth avenue."

It is alleged in the cross-bill of the Hyde Park Company that said company did, about July 14, 1894, for the purpose of carrying out said contract with the Mutual Company, connect its wires from poles along the south side of 61st street and along the east side of State street to the center line thereof with the wires of the said Mutual Company, and furnish said current of electricity to the said Mutual Company, as provided by said contract, and did maintain and operate said electric wires, conductors and system for the purpose of furnishing a current of electricity for light, heat and power to the said Mutual Company; and that the city by its agents, without reason or excuse and without notice to cross-complainant, on said July 14th caused said wires and conductors along the south side of 61st street and east of the center line of State street to be cut, disconnected and destroyed, and thereby prevented said cross-complainant from furnishing said Mutual Company with electricity and from complying with said contract, and that the city has, ever since said wires were cut, refused to allow them to be repaired and again connected.

The injunction granted, as has before been said, was from hindering or interfering with the Hyde Park Company in

City of Chicago v. Mutual Electric Light Co.

restoring the wires to the condition they were in before they were cut by the city.

The question presented is one of very great importance, involving, as it does, the power of an electric light and power corporation, which is limited by the very terms of its grant, to operations within a definitely prescribed area or territory, to extend its operations generally and indefinitely into other territory not included in its grant, whenever it shall see fit to contract for that object with other corporations having rights within the additional territory.

The Hyde Park Company had no authority, under the ordinance of the village of Hyde Park, which contains its only grant of power, to furnish either electric light, heat or power, outside of the limits of that village, and the boundary of those limits on the west, which is the direction in which it seeks to extend its right to furnish electricity, was and is the center line of State street.

The permit of the commissioner of the board of public works of the city of Chicago (the successor of the village of Hyde Park) to string wires on poles outside of those limits, even if such were the terms of the permit by any sort of construction, could not extend the grant.

The right to furnish and transmit electricity is the essence of the grant. That alone is the public and useful end to be subserved. The poles, conduits and strung wires, are mere means to attain the useful ends accomplished by transmitted electricity.

The mere permission to string wires might or might not, according to circumstances, be within the control and permission of the executive officers of the village or city, but the right to transmit and supply light, heat and power, by the powerful agency of electricity, over the streets and public grounds of a village or city, rests peculiarly and exclusively in a proper legislative grant. And such grant, when given, will never be extended except by necessary implication from that which is expressed.

Here is a corporation upon which has been bestowed, by ordinance, a grant to erect and operate a plant for the

transmission of electric light, power and heat, through streets, etc., within the prescribed limits of the village conferring the grant.

No grant to go beyond the limits was conferred, not even by permission of adjoining municipalities.

Possessing this grant, and operating under it, the Hyde Park Company, by contract with another corporation possessing a like grant and privilege within another and different territory, connects its wires at the line where the territories of the two corporations meet, with the wires of the other corporation, and proceeds to transmit electricity over the wires of that corporation into territory within which it has no power to operate, with the same effect and for the same purposes that it operates within its own territory.

In every essential the doing of that is the same as if it had strung its own wires within that foreign territory and had transmitted electricity over them for the lighting and heating of, and furnishing power for, that territory.

Such is a most palpable evasion of the limitations of its grant and is a flagrant excess of the due exercise of its powers.

Public policy, as well as the contractual obligations between the company and the city, are most seriously violated by such methods. The limits of franchises granted by municipalities should not be extended by doubtful implication.

If such conduct by the Hyde Park Company should be sustained and it be permitted to thus extend itself into the territory it has thus entered, it might go on by successive connections with the wires of other companies with whom it should contract, and extend itself all over the city of Chicago, or, for that matter, the whole State.

The cunning of men to overreach their fellow-men, and the State itself, by contrivances which at first sight seem harmless, but are in reality fraught with dangerous tendencies, can best be checked by a strict and, perhaps, severe upholding of the law.

Counsel have intimated that the contract between these

City of Chicago v. Mutual Electric Light Co.

two companies is for temporary purposes only; but that is not the way the contract reads. Its provisions are " for the period of eight months (and as much longer as may be agreed upon by the parties hereto ").

The provision in the ordinance to the Mutual Company that it shall pay to the city ten thousand dollars as liquidated damages in case it " shall fail to complete such plant within " one year is, quite probably, a mere band of straw, so far as the erection of a power house and electric generating machinery of its own is concerned.

" Such plant," when read in connection with the " plant " that section one of the ordinance confers the power to " erect and operate," may, perhaps, as well mean poles, wires and conduits, as a power house or generating machinery, for which, if the contract with the Hyde Park Company should be upheld, there would be no use. The same contract provides for the furnishing by the one company and the receiving by the other of electric currents at all points along the line of State street, " as may be hereafter mutually agreed upon."

If this connection at 61st street shall be sustained as lawful, then, by the same reasoning, as many other connections along the entire length of State street, south of 39th street, as the parties should agree upon, might be made, and that such was the intention of the parties to the contract is, we think, apparent.

The city officials performed no more than their duty when they cut the connection between the two companies (King v. Davenport, 98 Ill. 305), and the injunction restraining them from interfering with a new connection of the wires should have been denied. The cause is therefore reversed, with directions to the Circuit Court to dissolve the injunction that was granted upon the cross-bill of the appellee, Hyde Park Electric Light and Power Company.

GARY, J.   I think the injunction is right, but this is but interlocutory, and I won't go into detail.