OAKLAND ELECTRIC COMPANY

*vs.*

UNION GAS AND ELECTRIC COMPANY.

Kennebec County.　　Opinion November 3, 1910.

*Corporations. Contracts. Ultra Vires. Electricity. Damages. Private and Special Laws, 1897, chapter 556, sections 2, 4.*

1. In an action upon the contract of a corporation (other than municipal at least) the defense of ultra vires will not be sustained unless the contract is shown to be hurtful to the public, or clearly forbidden by some provision of the corporate charter or other statute.

2. A contract merely in extension of some granted corporate power may be upheld, if not hurtful to the public, when a contract foreign to the purposes of the incorporation would not be upheld.

3. Every corporation has by implication the power to do whatever is appropriate for carrying into effect the purposes of its creation, unless the doing the particular thing is affirmatively prohibited by its charter or some other provision of law.

4. The Union Gas and Electric Co. of Waterville was chartered by chapter 556 of Special Laws of 1897 for the purposes among others, of " making, generating, selling, distributing and supplying gas or electricity or both, for lighting, heating, manufacturing or mechanical purposes in the City of Waterville and adjoining towns " (section 2). *Held:* That under this section (2) the corporation had the power to contract to supply electricity to the town of Oakland, adjoining Waterville.

5. Power was also granted to the corporation, by section 4 of the charter to set poles and extend wires in and through the streets of Waterville and four other specified towns, not including Oakland, and to transmit electric power to such points in those towns as might be feasible. *Held:* That this enumeration of powers to set poles, etc., in the towns specified, did not prohibit the corporation from contracting to supply electricity to the town of Oakland.

6. The contract of the Union Gas and Electric Co. with the Oakland Electric Co. to generate and transmit electricity to the town line of Oakland for distribution over the lines of the Oakland Electric Company in Oakland, is not shown to be hurtful to the public, or expressly prohibited, and hence must be held valid.

7. Where in a contract three distinct agreements are made, each in a separate, distinct clause, and in one clause is a stipulation as to damages for the breach of the agreement named in that clause, that stipulation does not apply to the other agreements in the other clauses.

8. That one party was unable to perform his contract by forces beyond his control does not relieve him from the obligation of his contract, unless it be so stipulated in the contract.

On report. Judgment for plaintiff.

Action of covenant broken on a contract under seal. Plea, the general issue with a brief statement alleging that the contract was ultra vires. At the conclusion of the evidence the case was reported to the Law Court for determination, that court upon such evidence as was legally admissible to "render such judgment as the law and equity require."

The case is stated in the opinion.

*Harvey D. Eaton*, for plaintiff.

*Charles F. Johnson, and Dennis F. Bowman*, for defendant.

SITTING: EMERY, C. J., WHITEHOUSE, SAVAGE, PEABODY, SPEAR, CORNISH, KING, BIRD, JJ.

EMERY, C. J. The Union Gas and Electric Company (the defendant) was incorporated in 1897 by ch. 556 of the Special Laws of that year. The purposes of its incorporation are stated in section 2 of the charter which is as follows: "Sect. 2. The purposes of said corporation are the making, generating, selling, distributing and supplying gas or electricity, or both, for lighting, heating, manufacturing or mechanical purposes, in the city of Waterville and adjoining towns, or for either or any of such purposes, with all the rights and privileges and powers, and subject to all the restrictions and liabilities, by law incident to corporations of a similar nature."

Section 4 of the charter is as follows:— "Sect. 4. Said corporation is hereby empowered to set poles and extend wires in and through the streets and ways of the city of Waterville and the towns of Winslow, Benton, Vassalboro and Fairfield, for the purpose of furnishing electric lights for public and private use in said city and towns, under such reasonable restrictions as may be imposed

by the municipal officers thereof, subject to the general laws of the state regulating the erection of posts and lines for the purposes of electricity. It is also empowered to transmit electric power for lease or sale to such points in said city and towns as may be feasible, in such manner as may be expedient, and, subject to the general laws aforesaid, it may erect and maintain all posts, wires and fixtures necessary therefor. Said corporation shall have the right to lay gas pipes in any of the public streets or highways in said city of Waterville and said towns of Winslow, Benton, Vassalboro and Fairfield; the permit of the municipal officers of said city and towns having first been obtained in writing, and to relay and repair the same, subject to such regulations as the health and safety of the citizens and the security of public travel may require and as may be prescribed by the authorities thereof."

Dec. 8, 1899, the defendant company entered into a contract under seal with the assignors of the plaintiff company and their assigns, in which it covenanted to erect and maintain a line for the transmission of electricity from its station in Waterville to the Oakland line, (Oakland being an adjoining town to Waterville) and to furnish over said line, for lighting purposes in Oakland, electricity as required by the other party not exceeding one hundred and fifty horse power per year. The contract was to continue for three years and on Dec. 28, 1899, it was assigned to the plaintiff company, a corporation engaged in furnishing electricity for lighting purposes to customers in Oakland.

After the making of the contract the defendant company erected and maintained a transmission line from its station in Waterville to the line between Waterville and Oakland, and, up to June 23, 1901, in accordance with the contract, furnished over that line electricity to the plaintiff company, which latter company received the electricity there directly upon its own line constructed to that point, and passed it to its own customers in Oakland. The electricity passed directly from the station in Waterville to the consumers in Oakland without transformation. At that date, however, June 23, 1901, the defendant ceased to furnish electricity as required by its contract. This action is for that breach of the

contract. In defense, the defendant company claims that the contract was void in its inception because not within the corporate powers of the company, or, in technical language, was ultra vires.

It would seem from the later opinions of courts and jurists that the doctrine of ultra vires is thought to have been heretofore too often and too strictly applied, especially in cases of contracts of corporations (other than municipal at least) not in themselves harmful to the public. The doctrine is elaborately and exhaustively discussed with many citations of cases, etc., by the learned editor of the American State Reports, in a note to the case, *In re Assignment Mutual Ins. Co.*, 70 Am. St. Rep. 156. A later ample discussion is by the court of Minnesota in *Bell* v. *Kirkland*, 102 Minn. 213, 113 N. W. 271, 13 L. R. A. 793.

But, however the doctrine is regarded or applied by the courts when invoked by the State or by stockholders to prevent a corporation from avoiding its duties to the public, or from engaging in enterprises foreign in nature to those for which it was incorporated, its invocation by the corporation itself to avoid contracts found to be unprofitable is regarded with disfavor. In such cases, in most jurisdictions, the defense of ultra vires is not sustained merely because the contract is not within the express terms of the charter, nor where to sustain the defense would work any wrong or injustice. *Hawkes* v. *Eastern Counties*, 1 De G. M. G. 737, at page 760 ; *Norwich* v. *Norfolk R. R. Co.*, 82 E. C. L. 397, at page 445 ; *Third Av. Savings Bank* v. *Dimock*, 24 N. J. Eq. 26, at page 28 ; *Wright* v. *Pipe Line Co.*, 101 Pa. St. 204; *Whitney Arms Co.* v. *Barlow*, 63 N. Y. 62.

Also a distinction is made, and is apparent, between contracts foreign in nature to those contemplated in its charter, and contracts merely in extension of some corporate power. Thus a contract by a bank for the construction of a railroad would clearly be foreign to the banking business, while a contract by a railroad company to transport passengers and freight beyond its own line would not be foreign to the railroad business, and would be upheld though the power so to contract was not expressed in the charter. *Perkins* v. *P. S. & P. R. R. Co.*, 47 Maine, 573.

Recurring now to the case at bar; the defendant company was incorporated for the purposes of "making, generating, selling, distributing and supplying gas or electricity or both for lighting (and other purposes) in the city of Waterville and adjoining towns." The company's incorporation for those purposes gave it, without further legislation, authority to make and execute any contracts, not in themselves illegal, which would be adapted to the furtherance of those purposes. "It is a general principle of law that every corporation has by necessary implication the power to do whatever is necessary to carry into effect the purposes of its creation, unless the doing of the particular thing is prohibited by law, or its charter." Thompson on Corp., sec. 5641, and cases there cited. The contract in question was not foreign to the purposes for which the defendant company was incorporated but clearly was in furtherance of them. It provided for the making and selling electricity to be distributed for lighting purposes in an adjoining town, *Oakland* being an adjoining town. It was not a contract malum in se and hence, unless prohibited by some law or by the charter of the company, it must be held obligatory on both parties.

No clause in the charter or other statute is cited expressly prohibiting such a contract. It is urged, however, that the contract is impliedly prohibited by sec. 4 of the charter which specifically empowers the company to set poles and extend wires through the streets of "Waterville, Winslow, Benton, Vassalboro and Fairfield" for the purpose of furnishing electricity for electric lights in those municipalities. The argument is the familiar one, expressio unius exclusio alterius, that by enumerating those four towns the legislature prohibited the company from furnishing electricity to any other town even though it be an adjoining town to Waterville. We do not think sec. 4 has that effect. Without that section, or some equivalent legislation, the defendant company would have had no right to set poles and extend wires through the streets and ways of any of the towns named, and in order to do business it might have been obliged to purchase similar rights over private property. Sec. 4 enlarged, rather than limited, the power given the company by sec. 2 to sell electricity in Waterville and adjoining towns. It gave powers that

sec. 2 did not give. If it be suggested that sec. 4 did not give the company the right to furnish electricity to the plaintiff company over the transmission line authorized by that section, the answer is that that is a matter between the company and Waterville. The plaintiff company is not limited by the contract to electricity to be furnished over that line. If the defendant company cannot furnish electricity over that line it must provide some other line.

The cases cited by the defendant company do not in our opinion sustain the defense of ultra vires in this case. Cases of leases where the corporation undertakes to relieve itself of its obligations to the public (as in *Brunswick Gas Light Co.* v. *United Gas Co.*, 85 Maine, 532), are clearly not in point. Much stress, however, is laid upon the case, *City of Chicago* v. *Mutual Electric Light Co., and Hyde Park Electric Co.*, 55 Ill. App. 429. In that case the Hyde Park Co. had a municipal license to extend wires in one part of Chicago, and the Mutual Co. in another part. The former company agreed to furnish electricity to the latter company, and for that purpose united the two systems of wires. The city disconnected them and the companies sought to enjoin the city from preventing a re-connection. The case was not between the two companies, but between them and the city. The only question was as to the rights of the companies against the city. Even upon that question the judge of the court of the first instance granted the injunction, and upon appeal one of the then judges of the appellate court held the same. The four judges considering the case were thus equally divided in opinion.

The defense of ultra vires must be overruled.

Another defense was set up. Besides agreeing in one distinct clause of the contract (the first) to erect and maintain a line for the transmission of electricity, and agreeing in a second clause to furnish over that line electricity for lighting purposes, the defendant company further agreed, in a third and separate clause, to furnish over the same line "if desired" electricity for power purposes. In this third clause was this stipulation viz: "In case of interruption of service, a pro rata deduction (from the price to be paid) shall be made and there shall be no other penalty." This stipulation, how-

ever, only applies to the agreement in that clause, the agreement to furnish electricity for power. To apply it to all the defendant company's agreements in the contract would be to destroy all obligation of the contract, a result which the language of the contract does not show to have been intended.

It also appears that the failure of the defendant company to furnish electricity to the plaintiff after June 23, 1901, was caused by a washout of part of the defendant company's dam, crippling the company's power to generate electricity. There was, however, no stipulation in the contract that such an event should relieve the defendant company from the obligation it assumed of furnishing electricity to the plaintiff for lighting purposes.

No other defense is suggested and it follows from the above that the plaintiff must have judgment, but the evidence does not enable the Law Court to make a satisfactory estimate of the damages. Hence the certificate should be,

*Judgment for the plaintiff.*
*Damages to be assessed at nisi prius.*