## PRATHER ET AL. v. LATSHAW ET AL.

[No. 23,244. Filed April 4, 1919.]

1. CONTRACTS.—*Performance.*—*Defenses.*—*Act of God.*—An unprecedented flood that did not render impossible the performance of a contract for the construction of a ditch and levee, though it damaged the work already done, did not excuse the contractor from the completion of the contract. p. 209.

2. CONTRACTS.—*Performance.*—*Defenses.*—*Act of God.*—Where an obligation is imposed by law, a failure of performance thereof that is due to an act of God will be excused; but where a party by contract creates an absolute and unconditional obligation, the performance of which rests on himself, he is bound to perform or to answer in damages, notwithstanding any act of God or inevitable accident, because he might have provided against such contingencies. p. 210.

3. DRAINS.—*Contracts.*—*Recovery of Value of Work After Annulment of Contract.*—Although a bid was attached to a contract for the construction of a ditch and levee showing that the total amount of the bid resulted from a calculation based on a price per cubic yard of earth in the levee, the contract was a unit and required the construction of the entire work; hence the contractor could not, after annulment, recover the value of

the work done under §6144 Burns 1914, Acts 1907 p. 508, where its value was exceeded by the cost of its reconstruction after damage by unprecedented flood. p. 211.

From Sullivan Circuit Court; *William H. Bridwell*, Judge.

On petition of Leona Prather and others, opposed by Joseph Latshaw and others, the circuit court ordered the construction of a ditch and levee in Sullivan county, appointed a commission for construction, and let the contract to Edwin E. Watts. After annulment of his contract, Watts filed a petition in the original proceedings for the allowance of a fair price for work performed as provided in §6144 Burns 1914, Acts 1907 p. 508. The court denied the petition and overruled a motion for new trial, and Edwin E. Watts appeals. *Affirmed.*

*Edwin E. Watts, Robinson & Stilwell* and *Hunt & Gambill*, for appellants.

*Arthur D. Cutler* and *A. G. McNabb*, for appellee.

LAIRY, J.—Leona Prather and others filed their petition in the Sullivan Circuit Court for a drain and levee in Sullivan county, Indiana. Such proceedings were had as resulted in an order establishing the work and referring the same to Salathiel Boone, as commissioner for construction, who on March 18, 1911, let the contract for the construction of said work to appellant Edwin E. Watts. The contract between Watts and the construction commissioner was in writing, and provided that the contractor should construct and complete the work by January 1, 1912, at and for the price of $23,-634.70. It also provided for a bond to be given by the contractor and for the payment of eighty per cent. of estimates to be made as the work progressed, and the remaining twenty per cent. on completion of the contract.

The contractor failed to complete the work by the

time fixed in the contract, and on February 17, 1912, the construction commissioner granted an extension of time in writing until July 1, 1912. Subsequently to this time the work was sublet by the contractor and a further extension of time for completion was granted to April 15, 1913. In the early days of March, 1913, occurred an unprecedented flood which damaged the work and washed away a large part of the levee which had been constructed under the contract. In November, 1913, Salathiel Boone, having previously resigned as construction commissioner in charge of said work, entered into a contract with appellant Watts, by which he agreed to construct all of that part of the work between station 80 and station 0 at the source of the drain. The work that had been done prior to this was between station 80 and station 209-10, which was the lower terminus of the improvement as planned. The damage caused by the flood of 1913 affected the work constructed between the stations last mentioned.

After the resignation of Boone as superintendent of construction, the court appointed William L. Sisson to that position. On January 30, 1914, Sisson, as superintendent of construction, gave notice, as provided by statute, that on February 10, 1914, he would annul the contract of Edwin E. Watts theretofore existing for the construction of the improvement, and that he would let the contract for the completion of the work to the best bidder. On the day fixed the contract for the completion of the work was let to Salathiel Boone, and on March 6, 1914, Salathiel Boone entered into a written contract and gave bond for the completion of said work.

Section 5 of the act, supra, under which the proceedings were instituted, provides for the letting of the contract, the construction of the work and the collection of assessments. This section provides that, in case any contractor shall fail or refuse to construct the part of

the work contracted to him within the time according to the specifications, or should it become manifest that such person would not complete the same or would be unable to complete the same within the time limited or in the manner specified, then the person charged with the construction of such work may annul the contract and let the same to the best bidder, first giving ten days' notice by publication in a newspaper published in the county in which that part of such work lies. It further provides that the contractor so in default shall not again become a bidder for the unfinished portion of the work, but such contractor shall be allowed on his contract a fair price for the work he has performed up to the time his contract is so annulled, such price to be determined by the court establishing such work. §6144 Burns 1914, Acts 1907 p. 508, §5.

Appellant filed a petition in the original proceeding asking that the court, under the provisions of this statute, allow him a fair price on his contract for the work performed by him up to the time when his contract was annulled. He alleged that prior to that time a large amount of the work had been done under his contract, and that he had been allowed and paid only eighty per cent. of the estimated value of the work done, and that the remaining twenty per cent. of the value of the work so done, amounting to $3,504.03, was still due him and remained unpaid.

It is also alleged that on December 1, 1913, a further extension of time was granted for the completion of the work by William L. Sisson, and that the time so granted had not expired when Sisson, as superintendent of construction, attempted to annul his contract and to relet the same.

After hearing the evidence on appellant's petition, the court refused to allow him anything on his contract. Appellant Watts filed a motion for a new trial on the

ground that the decision of the court was not sustained by sufficient evidence, and that it was not according to law. The court overruled this motion, and this ruling is assigned as the only error on appeal.

The evidence of appellant shows that he claims a balance due him of $3,501.64 for work done on the Prather levee between station 80 and station 209-10 at the Wabash river. It shows that the levee between those stations was brought up to grade except as to certain creek crossings and road crossings. He testified that there were eleven creek crossings, of which he constructed nine, and that he constructed two of the road crossings. He further testified that the work was measured and the number of cubic yards estimated, and that he was allowed and received eighty per cent. of the estimated value of the work amounting to $12,929.11, leaving twenty per cent. of the estimated value of the work performed by him still due. Mr. Sisson, the last superintendent of construction, who was also the county surveyor, corroborated the appellant to the extent of saying that the levee between station 80 and station 209-10 was practically brought up to grade by appellant, except as to the creek crossings, and that after deducting 4,000 cubic yards for those crossings the amount of earth claimed by appellant was actually put into the levee; but this witness testifies that, after the levee between those stations was brought up to grade, it was washed away by the flood of 1913, and that at the time he relet the contract to Boone an estimate made by him showed that it would require 24,600 cubic yards of earth to bring the work up to grade between the stations mentioned. There is other evidence showing the extent of damage done to the work between those stations by the flood,— one witness testifying that the levee was almost entirely washed away in places, and that in other places

parts were washed out.  The evidence shows that the cost under the contract with Boone of bringing the work up to grade between the stations mentioned would be twenty-five cents per cubic yard, and that 24,600 cubic yards would be required.  It thus appears that the cost of restoring and completing the work between the stations mentioned will far exceed the estimated balance claimed by appellant as due him.  It further appears by the evidence that the cost of completing the entire work, which appellant agreed to perform under his contract including the part damaged by the flood, will exceed the original contract price, and that an additional assessment has been made on the lands affected to provide for the excess.

The finding of the court is fully sustained by the evidence and is in accordance with the law.

Appellant relies on a proposition of law which, as stated by counsel, is to the effect that a party to a contract is not bound to perform it where performance is rendered impossible by the act of God, by the law, or by the act of the other party to the contract.  As sustaining the proposition, he cites a number of authorities.  It is asserted that, under the rule announced by the authorities cited, appellant was not bound to repair the loss occasioned by the flood, even though the work to be done under the contract was not completed at the time the loss occurred.  The authorities cited can all be distinguished from the case at bar.  In this case the flood did not render the performance of the contract impossible.  After the flood subsided, there was nothing to prevent appellant from completing the work according to his contract, and he is not excused from doing so on account of the damage occasioned by the flood.  *Boyle* v. *Agawam Canal Co.* (1839), 22 Pick. (Mass.) 381, 33 Am. Dec. 749; *Chap-*

man & Co. v. Montgomery Water Power Co. (1903), 126 Fed. 372, 61 C. C. A. 347.

To say that a party to a contract is excused where performance is rendered impossible by the act of God cannot be regarded as an accurate statement of 2. the law. Where an obligation is imposed by law, as it is in the case of common carriers, the law will excuse where the failure to perform the obligation is due to the act of God. *School District No. 1* v. *Dauchy* (1857), 25 Conn. 530, 68 Am. Dec. 371; *Brown, etc., Co.* v. *Susquehanna Boom Co.* (1885), 109 Pa. St. 57, 1 Atl. 156, 58 Am. Rep. 708. On the other hand, if a party by his contract creates an absolute and unconditional obligation, the performance of which rests on himself, he is bound to make it good or to answer in damages, nothwithstanding any act of God or inevitable accident, because he might have provided against such contingencies by his contract. *Mitchell* v. *Hancock Co.* (1907), 91 Miss. 414, 45 South. 571, 15 L. R. A. (N. S.) 833, 124 Am. St. 706; *Schwartz* v. *Saunders* (1867), 46 Ill. 18.

Any seeming exception to the rule thus stated will be found to rest on the construction placed on the contract with reference to the subject-matter or on account of the conditions of the parties rather than on a denial of the principle stated. To illustrate, if A contracts with B to build a house according to certain plans and specifications, furnishing all labor and material, the fact that it may be destroyed by an act of God or inevitable casualty when almost completed will not excuse A from the obligation to furnish labor and material and to rebuild it; but, if A contracts to furnish and install an elevator in a building owned by B already in existence, the destruction of the building in which the elevator was to be installed will excuse performance. *Siegel* v. *Eaton, etc., Co.* (1897), 165 Ill. 550, 46 N. E. 449. The

reason upon which such decisions are based is that the parties in making the contract assumed the continued existence of the building until the completion of the work, and the contract is construed in the light of such assumption. *Krause* v. *Board, etc.* (1903), 162 Ind. 278, 70 N. E. 264, 65 L. R. A. 111, 102 Am. St. 203.

Attached to the contract of appellant is the bid on which it is based. This shows that the total amount of the bid was the result of a calculation based on a price of fifteen cents for each cubic yard of earth to be placed in the levee under the plans and specifications. The evidence shows that the estimates were made on the same basis as the bid. Relying on what has just been stated, appellant takes the position that the contract was not a unit, and that he was entitled to recover at the price stated for the number of cubic yards placed in the levee, even though the contract was not completed and a part of the levee was washed away by a flood. This position of appellant cannot be sustained. In a case involving the construction of a contract very similar to this, it was held that the contract required the construction of the entire work included therein. *Boyle* v. *Agawam Canal Co., supra.* The decision in that case meets with the approval of this court.

The trial court did not err in overruling appellant's motion for a new trial.

Judgment affirmed.

NOTE.—Reported in 122 N. E. 721. Contracts: excuses for non-performance, validity, 18 Am. Dec. 452. See under (2) 13 C. J. 639.