WILLIAM H. OSBORN and ROY O. WHITNEY, Plaintiffs, *v.* WILSON & COMPANY, INC., Defendant.

Supreme Court, Wayne Trial Term, April, 1922.

Contracts — agreement to sell certain fruit packed by seller conditional upon prevention to deliver by reason of floods, drought or any other unavoidable cause — when destruction of crops by frost and wind in territory from which seller drew his supplies excuses partial failure of delivery.

The rule that when general words follow specific words and the latter are not exhaustive of their class the comprehensive words are restricted to a sense analogous to that of the particular words, is one of limitation only, and the general words must be given meaning and effect.

A contract for the sale of a certain quantity of canned raspberries and of canned cherries packed by plaintiffs contained the following clause: " In the event of floods, drought or any other unavoidable cause preventing Seller from filling this contract in full, and in the event of supplying goods or interruption occasioned by request, order or requisition of the Government of the United States, or any governmental or war activity, Buyer agrees to accept delivery from Seller pro-rata with other civilian orders entered." *Held*, that in harmony with the rule *ejusdem generis*, the words " any other unavoidable cause " were limited to conditions created by the elements.

In an action to recover the balance due for raspberries delivered, there having been no delivery of cherries, the defendant pleaded as a counterclaim his damages caused by the failure of plaintiffs to deliver the full amount of the berries and cherries contracted for and offered to show that plaintiffs, in open market, could have purchased canned goods sufficient to fill their contract with defendant. *Held*, that under the terms of said contract, plaintiffs were excused from making full delivery because the cherry crop was destroyed and the berry crop partially failed in the territory in which plaintiffs were accustomed to purchase such fruit for packing at their factory, and a motion to set aside a directed verdict in plaintiffs' favor and for a new trial upon the minutes will be denied.

The contract being for the delivery of goods packed by plaintiffs, both parties were bound thereby, and the fact that the market price of canned goods at the time of delivery was higher than that specified in the contract was immaterial, as had the market price been lower and plaintiffs had gone into the open market and purchased canned goods and attempted to deliver them, defendant could have refused to receive them and was not entitled to insist that plaintiffs should so act.

MOTION by defendant to set aside a verdict directed by the court and for a new trial upon the judge's minutes.

*John F. Connor*, for plaintiffs.

*Charles T. Ennis*, for defendant.

CUNNINGHAM, J. The parties hereto entered into two written contracts in which plaintiffs agreed to sell to defendant 6,000 dozen cans of Columbia raspberries and 500 dozen cans of sour cherries. Plaintiffs delivered 3,600 dozen cans of berries but made no delivery of cherries. Plaintiffs seek to recover the balance due for the goods delivered. The defendant sets up a counterclaim for damages caused by the failure of plaintiffs to deliver the full amount of the berries and cherries contracted for.

Each of the contracts contains the following clause: " In the event of floods, drought or any other unavoidable cause preventing Seller from filling this contract in full, and in the event of supplying goods or interruption occasioned by request, order or requisition of the Government of the United States, or any governmental or war activity, Buyer agrees to accept delivery from Seller pro-rata with other civilian orders entered."

The uncontradicted testimony shows that in 1919, the year of the contracts, the cherry crop was a complete failure in the territory from which plaintiffs received their supply for canning purposes, and that the berry crop was about fifty to sixty per cent of normal. The defendant received its *pro rata* share of berries packed by the plaintiff during that season. The failure of the cherry crop was caused by a frost and the reduction in the amount of the berry crop was occasioned by a dry spell and a windstorm. Plaintiffs claim that, under these facts, they were excused from a full delivery, and the court, upon the trial, directed a verdict in favor of the plaintiffs for the balance due them.

The contracts provide that the buyer shall accept a *pro rata* delivery " in event of floods, etc., preventing seller from filling this contract in full, *and* in the event of supplying goods * * * occasioned by requisition of the Government of the United States."

The defendant claims that the contracts should be construed, in order to excuse full delivery, to mean that floods or drought must have occurred and also that the United States government must

have requisitioned the goods. It is clear that it was not intended that both events should happen in order to excuse performance. If a flood destroyed the entire crop the seller would have no goods to deliver, as would also be the case if the government requisitioned the entire output of the factory. The happening of either contingency would be sufficient to excuse performance. It is a well-settled rule of construction that " and " may be read as " or " when the terms of the contract show that such was the intention of the parties. *Sonneborn* v. *Libbey*, 102 N. Y. 539; *People* v. *Frudenberg*, 209 id. 218.

Defendant claims that the term used in the contracts, " floods, drought or any other unavoidable cause," does not include frost and winds and relies upon the rule of construction expressed in the maxim *ejusdem generis*. It is true that when general words follow specific words and the latter are not exhaustive of their class, the comprehensive words are restricted to a sense analogous to that of the particular words. This rule, however, is not one of elimination but of limitation only; the general words are not to be excluded as purposeless, they must be given meaning and effect. Floods and droughts are caused by the elements, in fact, they are the extremes of conditions so occasioned. It seems to me that it is in harmony with the rule *ejusdem generis* to limit the words " any other unavoidable cause " to conditions created by the elements. If floods and drought are the extremes of such conditions, the general words following must be deemed to have referred to the intermediate conditions originated by the elements.

I am of the opinion that the contracts must be construed as providing that the buyer will accept a *pro rata* delivery in case full delivery cannot be made because there was a short crop caused by dryness, frost and wind. Under the terms of the contracts, plaintiffs were excused from making full delivery because the cherry crop was destroyed and the berry crop partially failed in the territory in which they were accustomed to purchase such fruit for packing at their factory. *Kreiwaitis* v. *New York Canners, Inc.*, 199 App. Div. 909.

Defendant offered to show that plaintiffs could have gone out in the open market and purchased canned goods sufficient to fill their contracts in full. It thus becomes necessary to examine the contracts to determine whether plaintiffs agreed to sell and defendant agreed to purchase goods to be packed by plaintiffs in their factory, or whether the contracts referred to articles canned at any factory by any packer.

The plaintiffs operated a canning factory in Ontario and defendant had bought goods of them in previous years. The defendant thus

knew that it was dealing with a packer and not with a jobber. The contracts provide that " Seller is not liable in case of destruction of factory by any unavoidable cause," and also that the goods are to be delivered " f. o. b." factory. The use of the word " factory " shows that the parties knew that plaintiffs were operating a " plant where something is made or manufactured from raw or partly wrought materials into forms suitable for use." *Shannahan* v. *Empire Engineering Corp.*, 204 N. Y. 543.

Both contracts provide that the goods were to be of the " 1919 pack," and also that " shipping instructions to be furnished as soon as goods are packed."

It is evident from a reading of the contracts that defendant agreed to purchase goods to be packed by plaintiffs. The fact that the market price of canned goods at the time of delivery was higher than that specified in the contracts is not material in this case. If the market price had been lower and plaintiffs had gone out into the open market and purchased canned goods and attempted to deliver them to defendant, defendant could have refused to receive them. The contract was for the delivery of goods packed by plaintiffs and both parties were bound by it. Plaintiffs did not have the right to deliver goods other than those packed by them and defendant is not entitled to insist that they shall do so.

The motion for a new trial is denied, with ten dollars costs.

Ordered accordingly.