DIXIE-PORTLAND FLOUR COMPANY *v.* KELSAY-BURNS MILLING COMPANY.

[No. 12,638.   Filed April 29, 1927.]

1.  SALES.—*Correspondence relative to sale of flour held insufficient to show contract of sale.*—Correspondence between parties relative to a sale of flour by a manufacturer to a dealer which did not show the quantity, kind or price of the flour sold, the terms of payment, the delivery point, nor who was to pay the freight, did not constitute a contract of sale, as all such elements are necessary to a complete executory contract of sale of this kind.   p. 138.

2.  SALES.—*Destruction of seller's flour mill excused further performance of contract to furnish stipulated quantity of flour, contract containing "dispensation clause" against fire.*—Where a party contracting to sell flour was a manufacturer, and not a broker, which fact was known to the purchaser, and the contract contained a "dispensation clause" excusing the seller from performance in case of fires, strikes and other causes

138    APPELLATE COURT OF INDIANA,

Dixie-Portland Flour Co. v. Kelsay-Burns Milling Co.—86 Ind. App. 137.

beyond his control, the destruction of his mill by fire or other casualty against which there was a "dispensation," without his fault, would excuse further performance of the contract (*Prather* v. *Lutshaw*, 188 Ind. 204, distinguished). p. 143.

From Warrick Circuit Court; *Caleb J. Lindsey,* Judge.

Action by the Dixie-Portland Flour Company against the Kelsay-Burns Milling Company. From a judgment for defendant, the plaintiff appeals. *Affirmed.* By the court in banc.

*John D. Welman, Phelps F. Darby* and *Sivley, Evans & McCadden,* for appellant.

*Spencer, Ensle & Spencer,* for appellee.

NICHOLS, J.—This is an action to recover damages for the breach of a written contract of sale. The contract was for the sale to appellant of 18,500 barrels of flour. After shipping to appellant 2,750 barrels, appellee's flour mill at Evansville was destroyed by fire. Appellee thereafter failed to deliver to appellant the remaining 15,750 barrels. The market price of flour had meanwhile advanced substantially over the contract price.

After issues, a trial resulted in special findings of fact and conclusions of law in favor of appellee, on which judgment was rendered for appellee, from which this appeal.

The errors assigned which we need to consider relate to the conclusions of law. It appears by the special findings that appellant has been engaged in buying and selling flour at Memphis, Tennessee, for more than four years last past, and that appellee, in January, 1924, purchased a flour mill at Evansville, Indiana, known as the Akin-Erskine Mill, and was engaged in manufacturing flour in such mill and selling the same from that time until the mill was destroyed by fire on February 23, 1924. On January 30, 1924, and

for more than a year prior thereto, the Cereal By-Products Company of St. Louis, Missouri, was engaged in the flour, grain and seed brokerage business, their main office being in St. Louis, with a branch office at Memphis, Tennessee, of which A. W. Bosworth was in charge, and all of the foregoing facts were at all said time well known to appellant. On January 9, 1924, Herman F. Wright was the secretary and general manager of appellee, and, as such official, caused a letter of that date to be addressed and forwarded by mail to appellant, which was received by appellant on January 11, 1924. This letter was followed by two telegrams dated January 11, 1924, and a letter dated January 29, 1924. These four instruments are claimed by appellant as constituting the contract sued on in its complaint. It is unnecessary for us to set them out in full, for the purposes of this opinion. It is sufficient for us to say that the trial court did not agree with this contention, nor do we. From these four instruments, we cannot determine the quantity, kind or price of the flour sold, the delivery point, the terms of payment, nor who was to pay the freight—all necessary elements of a completed executory contract.

It appears by the findings that an order contract for the flour here involved had been theretofore placed by appellee with the American Hominy Company, and that a complete executory contract, including the omitted elements mentioned above, was entered into. Thereafter, the hominy company became insolvent and was placed in the hands of a receiver. Reference was made to this fact in the first letter set out in the findings, being the letter of January 9, 1924, with an offer therein to place the contract elsewhere, which offer was accepted by telegram. It is appellee's contention that the contract with the hominy company entered into and became a part of the contract here in-

volved, and appellant concedes that reference may be had thereto for the purpose of determining the delivery point, the price, and who was to pay the freight. But the trial court was not impressed with this contention, though it mentioned in its findings the contract made with the hominy company. The court did include, however, three "confirmations of sale" forwarded by the Cereal By-Products Company, brokers, to appellee, and three "confirmations of purchase" forwarded by the brokers to appellant, all dated January 30, 1924, all of these six instruments being alike in their terms, but embracing, respectively, confirmations of sales and of purchase for 12,000 barrels, 5,000 barrels, and 1,500 barrels of flour. These instruments contain all the elements of a completed executory contract, including the elements above referred to as omitted from the four instruments which appellant contends constitute the contract. The court held that the complete terms of the contract were found in these six instruments, and we see no reason for disturbing the court's conclusion. Certain it is that we must look elsewhere than to the four instruments above relied upon by appellant for a completed contract, and, for the purpose of this case, it is immaterial whether we look forward to the confirmations of January 30, 1924, or backward to the contract with the hominy company, for both that contract and each of the six instruments of January 30, 1924, contain a "dispensation clause" to the effect that all contracts are contingent upon strikes, fires, delays of carriers, and other causes beyond the seller's control, which must determine this appeal.

Appellant's counsel, in oral argument, stated that the "dispensation clause" in the hominy company contract was not the same as such clause in the confirmations of sales. The hominy company contract was not made a part of the special findings of the court except that there

is a "dispensation clause" therein quoted from the hominy contracts which is the same as the ones in the confirmations of sales. The only question which we are considering being as to the correctness of the conclusions of law, it is not proper for us to go beyond the findings for the facts in the case. But, since the oral argument, we have examined the record and, on page 263 thereof, defendant's "Exhibit 2," which is a confirmation of sales by the hominy company to appellee, there is a "dispensation clause" which is verbatim with the "dispensation clauses" in the confirmation of sales which the court found contained all of the terms of the contract here involved. "Exhibit 3" is a contract of sale of 6,000 barrels of flour by the hominy company to appellee, not dated, so far as we can discover, which contains the following "dispensation clause": "The seller shall not be responsible for failure to ship according to the terms and conditions of this contract where such failure is caused by any fires, strikes, labor difficulties, failure of carriers to furnish facilities or acts of carriers or other causes beyond the control of the seller; PROVIDED, that when such failure does exist the seller shall perform this contract within a reasonable time, in any event, not to exceed thirty (30) days from the termination of the cause or conditions resulting in seller's inability to perform." Since, in this case, the flour mill which appellee was using in the manufacture of his flour was totally destroyed by fire, the "dispensation clauses," under the circumstances of this case, are alike in effect. Each of the six instruments of confirmation of purchase and sale, as well as the contract with the hominy company, contains the following: "If this contract is not in accordance with your understanding we must be advised immediately. Failure to do so is understood as acceptance."

It appears by the findings that there was no objection

at any time to the terms and conditions of such confirmations. It further appears that since August 13, 1923, appellant had known that the Cereal By-Products Company was a firm of brokers who had their main office at St. Louis, Missouri, and knew on January 30, 1924, that appellee had employed said firm of brokers for its negotiations in regard to the sale of the flour in suit; and both appellant and appellee understood that the flour purchased by appellant from appellee was to be manufactured in appellee's mill at Evansville, Indiana. On February 23, 1924, appellee's said flour mill was completely destroyed by fire, except the wheat tanks and boiler room, which destruction rendered it impossible for appellee to manufacture said flour in its said mill. The fire which destroyed appellee's mill was not caused by the design or negligence of appellee, and appellee had manufactured and delivered to appellant all flour under its contract for which it had shipping instructions prior to the destruction of its mill by fire. It is apparent that when the contract was entered into by the parties, they had in mind the conditions as they then existed, that appellant understood that appellee was a manufacturer of flour, and not a broker, and that, under the terms of the contract, it could furnish only such flour as it manufactured, being the flour specified in the contract. It follows, of course, that with the destruction of its mill, appellee could not furnish the flour which it had theretofore been manufacturing and furnishing. The "dispensation clause" must therefore be interpreted in the light of these conditions, and, so interpreted, it must be held that in the event of a fire which made it impossible for appellee to furnish the brand of flour specified, it was thereby relieved from its contract.

In *Prather* v. *Latshaw* (1919), 188 Ind. 204, 210, 122 N. E. 721, it was held that: "If a party by his contract creates an absolute and unconditional obliga-

Dixie-Portland Flour Co. *v.* Kelsay-Burns Milling Co.—86 Ind. App. 137.

tion, the performance of which rests on himself, he is bound to make it good or to answer in damages, notwithstanding any act of God or inevitable accident, *because he might have provided against such contingency by his contract."* (Our italics.) In this case, however, the "dispensation clause" provided against the contingency which here happened—the destruction of the mill by fire.

Where it appears that the seller is a manufacturer, and not a broker, and the contract of sale contains a dispensation clause excusing the seller from per-

2. formance in cases of fires, strikes, etc., the destruction of his factory or plant by fire, or any other casualty against which there is a dispensation, without his fault, will excuse further performance. *New England, etc., Constr. Co.* v. *Shepard, etc., Lumber Co.* (1914), 220 Mass. 207, 107 N. E. 917; *Leavenworth State Bank* v. *Cashmere Apple Co.* (1922), 118 Wash. 356, 204 Pac. 5; *Ranney-Davis, etc., Co.* v. *Shawano Canning Co.* (1922), 111 Kans. 68, 206 Pac. 337; *Metropolitan Coal Co.* v. *Billings* (1908), 202 Mass. 457, 89 N. E. 115; *Delaware, etc., R. Co.* v. *Bowns* (1874), 58 N. Y. 573; *Durden-Coleman Co.* v. *Wm. H. Wood Co.* (1915), 221 Mass. 564, 109 N. E. 648; *Normandie Shirt Co.* v. *Eagle, Inc.* (1924), 238 N. Y. 218, 144 N. E. 507, 35 A. L. R. 714; *Osborn* v. *Wilson & Co.* (1922), 193 N. Y. Supp. 241, 118 Misc. Rep. 379.

Thus it appears that, even though the contract sued on in the complaint was the same as that which the court found to be the contract between the parties, still, there could be no recovery because of the "dispensation clause" in the contract. It follows that the court did not err in its conclusions of law. We do not need to consider other assigned errors.

Judgment affirmed.

Dausman, J., absent.