RETAIL MERCHANT'S BUSINESS EXPANSION COMPANY *v.* H. A. RANDALL.

January Term, 1931.

Present: POWERS, C. J., SLACK, MOULTON, WILLCOX, and THOMPSON, JJ.

Opinion filed February 4, 1931.

*Charles B. Adams* and *Webster E. Miller* for the defendant.

*Theriault & Hunt* for the plaintiff.

SLACK, J.    This action is to recover the amount due on four trade acceptances, including protest fees and interest.    The acceptances are for seventy dollars each, dated October 20, 1927, and payable to the order of the plaintiff one, two, three, and four months after date, respectively.    Trial was by jury.    At the close of all the evidence each party moved for a directed verdict.    The defendant's motion was overruled, and the plaintiff's motion was granted, to both of which rulings the defendant excepted.

On September 10, 1927, the parties entered into a so-called business expansion campaign contract under the terms of which the plaintiff was to furnish defendant certain articles of merchandise to be used as prizes in conducting the campaign, a booklet of instructions, weekly letters of plans and suggestions, and, upon request, certain written material for advertising, etc., and send one of its representatives to trim defendant's store windows, make the proper display, and in general start the campaign, and through its representatives and by correspondence assist and cooperate with the defendant throughout the campaign. In consideration of the foregoing, the defendant agreed to pay plaintiff $390 in the manner following: $50 at the time the contract was executed, $60 when the campaign was started, and the balance in trade acceptances. The defendant paid the $50 September 10, 1927. Shortly thereafter the plaintiff furnished the articles of merchandise specified in the contract and sent its representative to assist in starting the campaign, and the defendant then paid the $60 and executed and delivered the trade acceptances on which the plaintiff is seeking to recover. As far as appears both parties fully performed their several undertakings down to November 3, 1927, except the plaintiff failed to furnish the booklet of instructions. What this was, or why it was not furnished, did not appear. But since the defendant did not regard it of enough consequence to ask for it or make any claim respecting plaintiff's failure to furnish it until after this suit was brought, we give it no further consideration.

At the time the contract was made the defendant was, and still is, operating a drug store in that part of the village of Waterbury, Vt., that was inundated November 3 and 4, 1927. His store was entirely submerged, and he lost practically everything in it, including all of the articles of merchandise covered by the contract except a bicycle which was stored at his house at the time. He was unable to resume business in his store until December 23 following.

The main question is whether the conditions resulting from the flood terminated the contract. The defendant insists that both parties were thereby excused from further performance of their contractual obligations and consequently that he is absolved from the payment of the trade acceptances.

■ While it is undoubtedly true that the tendency of the law is toward the enlargement of the defense of impossibility, such process should be regarded with great caution since there is danger that courts, in their desire to relieve parties in hard cases, may go too far. The province of courts is to construe and enforce contracts, not to make or modify them. Nor will it be assumed that the people of the present generation are less competent to make their own contracts than were the people of former generations.

■ ■ Our attention has been called to the so-called Coronation Cases of which *Krell* v. *Henry* (1903), 2 K. B. 742 is the leading one, the so-called International Yacht Cases (*Alfred Marks Realty Co.* v. *Hotel Hermitage Co.,* 170 App. Div. 484, 156 N. Y. S. 179; *Alfred Marks Realty Co.* v. *Smith Serrell Co.,* 154 N. Y. S. 1109; *Alfred Marks Realty Co.* v. *"Churchills,"* 90 Misc. Rep. 370, 153 N. Y. S. 264); *Kinzer Const. Co.* v. *State* (N. Y. Ct. Cl.), 125 N. Y. S. 46; *Stewart* v. *Stone,* 127 N. Y. 500, 28 N. E. 595, 14 L. R. A. 215, and many others from other jurisdictions. But the law of this State on the subject is so clearly stated in *City of Montpelier* v. *National Surety Co.,* 97 Vt. 111, 122 Atl. 484, 487, 33 A. L. R. 489, that we need not look elsewhere for guidance. It is there said: "The principle deducible from the cases is that if what is agreed to be done is in nature possible and lawful, it must be done; or, otherwise stated, the promisor takes the risk within the limits of his undertaking of being able to perform." It is said, too, that to warrant the application of the principle of excusable impossibility, the impossibility must consist in the nature of the thing to be done and not in the inability of the party to do it.

The impossibility of performance, if any, in the instant case does not consist in the nature of the thing to be done. True, the parties may have expected when the contract was entered into that the defendant's business would continue uninterrupted where it was then located, but such expectation, merely, does not affect their legal status. See *Eddy* v. *Clement,* 38 Vt. 486. There was no agreement, express or implied, that the defendant should continue business in that particular store during the duration of the contract, or that there should be no interruption in his business. It is not apparent why the contract could not have been performed with equal benefit to both parties in any other store in that locality, and, indeed, it could have been per-

formed in that store inside of two months. In other words, the situation occasioned by the flood did not make the performance of the contract by the defendant impossible, except perhaps from a financial standpoint. But were it otherwise, the case falls within the rule announced in *City of Montpelier* v. *National Surety Co., supra,* rather than within the exception relied upon by the defendant. It has been held that nonperformance of a contract to furnish electricity is not excused by the partial destruction by flood of the obliger's power plant, *Oakland Electric Co.* v. *Gas & Electric Co.,* 107 Me. 279, 78 Atl. 288; that nonperformance of a contract to furnish water for fire protection is not excused by inability to perform due to no fault of the obligor, *Middlesex Water Co.* v. *Knappmann Whiting Co.,* 64 N. J. Law, 240, 45 Atl. 692, 49 L. R. A. 572, 81 A. S. R. 467; that one who contracts to furnish water for irrigation purposes is not excused from performance by drouth, *Northern Irr. Co.* v. *Watkins* (Tex. Civ. App.); 183 S. W. 431; that the destruction of a ditch and levee by an unprecedented flood does not excuse performance, *Prather* v. *Latshaw,* 188 Ind. 204, 122 N. E. 721; and that a municipality cannot avoid paying a school teacher her wages because the school was closed on account of contagious disease, *Phelps* v. *School District,* 302 Ill. 193, 134 N. E. 312, 21 A. L. R. 737. These cases and others cited in *City of Montpelier* v. *National Surety Co.,* illustrate the application of the rule laid down in the latter case.

While the phrase "act of God" is frequently used in connection with cases on impossibility, Professor Williston in his work on Contracts, par. 1935, says that it has no general application here; that except in the law of carriers there is no distinction between an impossibility arising from an act of God and one arising from any other cause, provided that the promisor be free from fault.

The defendant further claims that the plaintiff did not perform its part of the contract after the flood in that it did not furnish the services, assistance, and cooperation therein called for. As to this, the evidence clearly shows that any failure by the plaintiff to perform in these respects was due to the attitude of the defendant. He made no attempt to reestablish the advertising campaign, although the plaintiff made him repeated offers to assist and cooperate with him in every way possible; but took the position that he was financially unable

to perform his part of the contract, and that the plaintiff had not treated him as generously in helping him reestablish his business as had his other creditors. There is no foundation for the claim that plaintiff failed to perform his part of the contract in the particulars specified.

The defendant claims, too, that he has received no consideration for the trade acceptances. This claim is predicated upon the fact that owing to the flood he derived no benefit from the contract rather than to any fault or shortage on the part of the plaintiff. This is an attempt to raise in different form the question already decided, namely, the effect of the flood upon defendant's legal liability. For aught that appears, or is claimed, he received all that he was entitled to under the contract previous to the flood, except the booklet which, for the reason already shown, was of no importance, and might have received the services, etc., to which he was thereafter entitled but for his own attitude. This claim has no merit.

Under the terms of the contract the title to the articles of merchandise furnished by the plaintiff was to remain in it until the trade acceptances were paid, but this does not affect the rights or liabilities of the parties respecting any question here raised. *LaValley* v. *Ravenna*, 78 Vt. 152, 62 Atl. 47, 2 L. R. A. (N. S.) 97, 112 A. S. R. 896, 6 Ann. Cas. 684.

Plaintiff's motion for a verdict was properly granted. It follows that defendant's motion was properly denied.

*Judgment affirmed.*

NOTE. MR. JUSTICE WILLCOX sat at the hearing of this case, but took no part in the disposition of it.