STANLEY BURKE *v.* N. P. CLOUGH, INC.

(78 A2d 483)

Present: SHERBURNE, C. J., JEFFORDS, CLEARY, ADAMS and BLACKMER, JJ.

Opinion Filed February 6, 1951.

*Everett L. Hathorn* for the plaintiff.

*Alban J. Parker* for the defendant.

JEFFORDS, J.  On February 8, 1947, the plaintiff and the defendant signed a contract, the material terms of which required the plaintiff to cut and pile on suitable skidways all the merchantable timber located on a certain described lot of land.  He was to start work forthwith and prosecute the same with diligence until completed.  The defendant was obligated to pay the plaintiff $15.00 per thousand feet, Greenleaf caliper measure, weekly for all logs trucked into a designated yard.  $2.00 per thousand feet in addition to the $15.00 was to be paid upon satisfactory completion of the job.

The plaintiff started work in February, 1947, which was continued until about the first of June of that year, when it was stopped on the order of the defendant.  Operations were resumed in November of that year and continued until about the middle of January, 1948, when the plaintiff stopped work.  He then brought this action in contract for damages for the breach thereof.  The grounds for the breach as alleged in the complaint are that he was ordered by the defendant to stop, to desist from cutting any further and that the defendant wholly prevented him from performing his part of the contract.  A trial by jury was had which resulted in a verdict being directed for the defendant.  The ground for the motion made at the close of the plaintiff's case was, in substance, that there was no evidence in the case which would warrant the jury in reasonably finding that the defendant ordered the plaintiff to stop and desist from any further cutting or that the defendant wholly prevented the plaintiff from performing his part of the contract.  The case is here on the exception of the plaintiff to the granting of the motion for a directed verdict.

The material facts are not in dispute.  During the period from February to June there were some complaints by the plaintiff in regard to the claimed failure of the defendant to keep the skidways clear of logs and in regard to shortages in credit for the number of logs or board feet delivered to the defendant.  The plaintiff did not wish to stop work in June when ordered to, but did, and it was agreed that operations would be resumed in the fall of 1947.  No

time was set for the resumption of operations and it was left that the defendant would notify the plaintiff when it wished him to start. The plaintiff was requested in July to start work. He was not able to do so at that time but did commence operations in November.

At times after the resumption of operations the skidways were so filled with logs that no more could be placed on them, with the result that logs which had been cut were buried in the snow and not hauled out as there was no place to put them. At the time the plaintiff stopped cutting, these logs amounted to about fifty thousand feet. The trucks of the defendant did not draw away the logs from the skidways fast enough to take care of the congestion. Sometime in the middle of January, 1948, the plaintiff decided that he would not cut any more lumber and so notified the treasurer of the defendant who said he wished that the plaintiff would stay and complete the job. The skidway which was being used at the time of the stoppage of work had a capacity of 12,000 board feet. The defendant had four trucks, each with a capacity of from 2,000 to 2,400 board feet. As it had other similar jobs going at the time of the one here, usually only two of these trucks were used on this operation.

During the discussion between the court and counsel on the motion for a directed verdict the attorney for the plaintiff stated that he sought to recover only under the written contract above referred to which was set forth in the complaint and that his claim of prevention by the defendant of its fulfillment was based solely on the claimed shortages and the congestion of the skidways.

█ It is sufficient to say in regard to the claim that the shortages on the part of the defendant in giving credits to the plaintiff for the number of logs or board feet delivered to the defendant made it impossible for the plaintiff to complete his contract, that there was no evidence in the case which would have warranted the submission of this question to the jury. The plaintiff has not pointed out in his brief any evidence as to the amount of the claimed shortages in quantity or in value, nor have we discovered any such evidence in our reading of the transcript. A finding by the jury that the claimed shortages amounted to so much as to make it financially impossible for the plaintiff to continue under the contract would necessarily have been based upon speculation and conjecture and conjecture is no proof in him who is bound to make proof. *Jacobs* v. *Clark,* 112 Vt 484, 489, 28 A2d 369; *Wellman, Admr.* v. *Wales,* 97 Vt 245, 255, 122 A 659.

The act of one party in preventing the other from performing a contract is a breach thereof. *Peist* v. *Richmond,* 97 Vt 97, 99, 122 A 420; *Derosia* v. *Farland,* 83 Vt 372, 385, 76 A 153, 28 LRANS 577; 12 Am Jur 961 § 386. The expression "breach of contract" is confined to wrongful conduct. Restatement of the Law of Contracts, Vol. 1, § 312, comment a. The defendant did not specifically, nor by implication, agree to keep the skidways free from congestion at all times and under all circumstances and conditions. It was only obligated to use reasonable effort and diligence to keep the skidways in such shape that the plaintiff would not be unduly hindered or prevented from keeping his part of the contract. The burden was on the plaintiff to prove that the defendant did not exercise such effort and diligence. Assuming that there was evidence reasonably tending to show that there was at times a congestion of logs on the skidways, it was incumbent on the plaintiff to prove that this congestion was due to wrongful conduct on the part of the defendant in order to justify a finding that the latter had "prevented" the plaintiff from completing his part of the contract. *Peist* v. *Richmond, supra,* at page 98. Such wrongful conduct could consist of a failure of the defendant to stop or relieve the congestion because of negligence on its part. *Anvil Mining Co.* v. *Humble,* 153 US 540, 14 S Ct 876, 38 L ed 814; *Lynch* v. *Sellers & Co.,* 41 La Ann 375, 6 S 561, 5 LRA 682. It could also consist of a wilful or intentional purpose on the part of the defendant to have congestion so as to prevent the plaintiff from completing the contract. *United States* v. *Behan,* 110 US 338, 4 S Ct 81, 28 L ed 168; *Billings* v. *Killen,* 111 W Va 551, 162 SE 892; *Patterson* v. *Meyerhofer,* 204 NY 96, 97 NE 472, 473. In the case last cited it is said: "In the case of every contract there is an implied undertaking on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part."

There was no evidence in the case from which the jury reasonably could have found wrongful conduct on the part of the defendant in any of the respects mentioned. In fact the evidence, taken as a whole, tended to show to the contrary. There was no evidence that the plaintiff during the last of his operations complained of congestion on the skidways to the treasurer of the defendant, who apparently was in charge of the job for the defendant. There was evidence tending to show that no such complaints were made. The

plaintiff admitted that at a time when there was congestion the defendant sent a man who helped to load trucks for a whole day. He also admitted that during the latter part of December and in January, the month that he stopped work, the defendant sent trucks other than his own to draw away logs and during such times the defendant was so using its own trucks. He also admitted that during the week before he quit work nearly 34,000 feet of logs were taken off the skidway which had a capacity of 12,000 feet and which was the only one being used at that time. The previous week it was admitted that nearly 18,000 feet were taken off from the skidway and that substantial amounts were taken off during previous weeks. The skidway that was being used was located at the foot of a bank with the result that a lot of logs could be put on it at one time from the slopes in the land above the skidway.

A motion for a verdict is to be granted whenever it would be the duty of the court, in the exercise of a wise judicial discretion, to set aside a contrary verdict if rendered. Though there is some evidence in the record tending to establish the claim, if the countervailing evidence so preponderates over it that it would be an abuse of the trial court's discretion to refuse to set aside a plaintiff's verdict founded thereon, a motion for a defendant's verdict may, without error, be granted. *Horicon* v. *Estate of Langlois,* 115 Vt 470, 476, 66 A2d 16, 9 ALR2d 195; *Goodwin* v. *Gaston,* 103 Vt 357, 367, 154 A 772; *Wellman, Admr.* v. *Wales,* 98 Vt 437, 448, 129 A 317. We have stated that there was no evidence in the case from which the jury reasonably could have found that wrongful conduct on the part of the defendant caused the congestion on the skidways. But even if it could have been said that there was some evidence of wrongful conduct, the countervailing evidence so preponderates over it that under the rule above stated there was no error in the direction of a verdict for the defendant.

*Judgment affirmed.*