## Alice S. Cushman v. Robert S. Outwater et al

[159 A.2d 89]

January Term, 1960

Present: **Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.**

Opinion Filed March 2, 1960

*Manfred W. Ehrich, Jr.* for the defendants.

*Waldo C. Holden* for the plaintiff.

**Barney, J.** Robert S. Outwater was furnished funds totalling $15,400.00 by his mother, Alice S. Cushman, toward the purchase of a lot and construction of a dwelling house for himself, his wife Hildur and their children, and containing separate accommodations for Mrs. Cushman. Except for alterations financed out of these same funds in 1955 to provide kitchen facilities in Mrs. Cushman's portion, the house was completed and occupied by the parties in 1954. The money was furnished by the mother to her son with the understanding that she would be provided with a place to live in the house when in Bennington. She suggested that her other son, Edwin would receive an equivalent sum out of her estate, above and beyond an equal division between her two sons. From 1954 to the fall of 1957 Robert and his wife and Mrs. Cushman resided in the house, Mrs. Cushman, however, spending extended periods in Florida and away from Bennington during this time. In the fall of 1957 Robert and his wife dispossessed Mrs. Cushman by moving her belongings out of her quarters into storage while she was in Florida. She thereupon, as plaintiff, brought her bill in equity seeking to recover only the fair rental value of the accommodations which were to be available to her during her lifetime, and the storage expense. As defendants, Robert and his wife are resisting payment of any amount and have appealed the decree in favor of the plaintiff made below.

In this Court the defendants have challenged only the decree and a certain exclusionary ruling by the chancellor below relating to the materiality of a proposed line of inquiry.

The defendants urge that the money furnished by the plaintiff represented an advancement and claim the findings support their position. They first point to the chancellor's use of the term "advance" in connection with the money provided Robert. They then refer to the chancellor's finding

that the parties understood that the otherwise equal sharing by Edwin and Robert in the plaintiff's estate would be adjusted to account for these funds already furnished to Robert. All this, defendants maintain, amounted to a finding that the transaction was an advancement, which would make the money an irrevocable gift, not subject to repayment.

█ A considerable portion of defendants' brief is devoted to an exposition of the law of advancements. However, this doctrine is governed by statute and, by definition, comes into operation only after a donor has died intestate. 14 V. S. A. §1723. Hence it has no application here. Nor is the reasoning of cases relating to the doctrine helpful since it is concerned with the distribution of an estate as between heirs. 1 Am. Jur. Advancements, §7, p. 718. What we have under the findings is more nearly an agreement for a release of an expectancy. See *Simonds* v. *Simonds' Estate*, 96 Vt. 110, 117 A. 103; also 16 Am. Jur. 932, Descent and Distribution, §151 et seq. This action is not one dealing with the issues raised by such a doctrine, however, so we need spend no time on it.

The defendants further contend the decree is supported neither by the findings nor the pleadings. They argue that the decree presumes the existence of a contractual relationship not raised by the pleadings or established by the findings.

██ The findings disclose that the chancellor found that the plaintiff furnished the funds she did with the understanding that the construction undertaken was to have accommodations for her use included in it. During construction the plans were altered to enlarge the quarters intended for the plaintiff. After all parties had been living in the dwelling a year, a kitchen was added to her portion of the house at a cost of $1600.00 which she provided. The alteration and construction was supervised by the defendant, Robert Outwater. The findings are replete with references to the agreement to furnish living accommodations to the plaintiff in return for her financing of a part of the construction cost of the dwelling. Unquestionably, this agreement was acted on by both defendants and

plaintiff. Insofar as the decree requires the support of facts indicating a contractual arrangement between the parties, the findings supply it. A ceremonial formulation by the parties of the contract terms, either oral or written, is not a prerequisite to the existence of an agreement. The contract and its terms may be implied from the facts surrounding the transaction. *Raymond* v. *Sheldon's Estate*, 92 Vt. 396, 398, 104 A. 106. See also *Morse* v. *Kenney*, 87 Vt. 445, 448, 89 A. 865. Furthermore, whenever findings are reviewed, they are aided by rules of construction in favor of support of the judgment where reasonably possible, as set forth in *Smead* v. *Sutherland*, 118 Vt. 366, 368, 111 A.2d 335, which is representative of a long line of cases.

With respect to the contention that the pleadings do not support the decree because, the defendants say, plaintiff's theory of recovery in those pleadings was based on a claim of ownership and not on any contractual arrangement, an examination of the bill of complaint is revealing. Paragraph five reads as follows:

> "5. Prior to the beginning of the construction of the plaintiff's proposed new house and after they had taken title in their own names in the aforesaid building lot, the defendants requested the plaintiff to change the building plans of her proposed house and to enlarge her proposed house so as to permit the defendants and their children to reside in the same together with the plaintiff. In consideration therefor the defendants offered to pay the estimated additional cost of enlarging the proposed house—which estimated additional cost was ten thousand dollars, and to permit the plaintiff to live in the proposed house the remainder of her life without payment of any portion of the expenses incident thereto—such as taxes, water rents, repairs, insurance premiums, fuel costs, etc."

The bill further states that the promise to allow her to live in the house was renewed at the time she financed the construction of her kitchen addition. Furthermore, the bill declares the defendants to be the holders of record title to the property.

There in the quoted paragraph is the agreement substantially as found by the chancellor. There, also, is the reference to ownership of the premises which the defendants say represents an inconsistency that requires a reversal, when placed along-side the findings. Under her own pleading, however, the only "ownership" the plaintiff could be referring to would be what-ever equitable interest she might have acquired through furnishing three-fifths of the construction costs. But the claim of the plaintiff against the defendants does not turn on any claim of ownership, but on the contractual arrangement raised by the pleadings and found by the chancellor. Any allegations of ownership as made in this case are not an essential element of the equitable claim the plaintiff seeks to establish, and can form no basis for setting aside the decree.

The decree took the form of a mortgage lien against the premises in the sum of $15,400.00, the amount furnished by the plaintiff, with interest at five percent payable semiannually. The encumbrance is discharged by the death of the plaintiff, if the principal has not previously been paid. The defendants argue that the terms of the decree represent an abuse of dis-cretion in view of the findings. One of the chancellor's findings was that the income of the defendants approximates $5,000.00 annually and that the defendants are financially unable to raise the funds to repay the plaintiff or unable to pay her a reason-able amount of interest on her investment. The defendants claim that the decree has ordered them to pay a sum the chancellor has found them unable to pay.

This ignores the effect of the decree which is to turn over possession of the plaintiff's apartment in the dwelling to the defendants as a potential income producing asset. In his testimony Robert Outwater valued the apartment at between $75.00 and $80.00 a month for rental purposes. The decree set the measure of the value of the lost occupancy at five per-cent of $15,400.00, or about $65.00 a month. Clearly, the favorable balance between the admitted rental value and the required interest payment demonstrates a nice discretion look-ing toward avoiding the necessity for the defendants to use present income to meet the interest payments and giving them

a small financial cushion for contingences. Since the plaintiff has not challenged the sufficiency of the award, we are not called upon to determine whether the decree represents adequate compensation to her under the findings.

■ The defendants also complain because the performance of the decree is secured by a mortgage on the premises. It seems unnecessary to point out that this is a characteristic equitable device appropriately used to secure the obligations of a decree by the very property subject to the equitable interest involved. See 49 C. J. S., Judgments, §459, p. 888. Its duration here is limited to the lifetime of the plaintiff or the repayment of the principal amount. As we have seen, the obligation it enforces is not unreasonable in its terms and is supported by the rights of the plaintiff as determined from the facts. No abuse of discretion appears.

As a separate reason for reversal, the defendants point to an exception taken by them to an exclusionary ruling of the chancellor at the trial of the cause. During the plaintiff's case, while she was being cross-examined, her counsel objected to questions propounded to show the circumstances the defendants claimed justified the termination of the agreement by eviction. The chancellor allowed the inquiry. At a later point during the same cross-examination the chancellor expressed doubt that the parties needed to go into the particular acts of either party, but the examination of the plaintiff was not limited nor was any evidence excluded. The plaintiff was called again to the stand during the defendants' case and these matters were inquired of again. Plaintiff's counsel objected, and the chancellor inquired as to why this subject was again being gone into. The pending question was allowed, but at the same time the chancellor was asked by counsel for the defendants for a ruling on the admissibility of evidence bearing on fault on the part of the plaintiff in rendering the performance of the contractual arrangement impossible. The chancellor said, in substance, that the situation between the parties had become intolerable to both sides, in his view, from the standpoint of continuing to jointly occupy the premises, and that he expected to make a finding to that effect.

■ Such a finding was in fact made. The chancellor went on to say with respect to assigning blame for the situation, "I will rule you can't go into that line of questioning. Whose fault it was is not material." To that ruling the defendants were granted the exception we are considering here. In connection with the ruling defendants' counsel framed no question and offered no proposed testimony in support of their claim of fault. Neither the chancellor below nor this Court has ever been apprised by the defendants as to what further testimony or evidence of fault they intended to present beyond what had already been allowed in the case. How this question of fault in testimonial form would have measured up to evidentiary standards of admissibility cannot be known. As a general rule, a trier can be put in error on an exclusionary ruling only when the evidentiary offer is specific and concrete, which is not the case here. See *State* v. *Lawler*, 104 Vt. 50, 52, 156 A. 908; *Macauley* v. *Hyde*, 114 Vt. 198, 202, 42 A.2d 482; *Holton Estate* v. *Ellis*, 114 Vt. 471, 480, 49 A.2d 210; Wigmore on Evidence, Vol. 1, §17a, pp. 313-318.

However, it might be argued that the ruling of the chancellor was couched in language making it appear to the defendants that they were excused from making such an offer and could rely on the record made in connection with this exception. The citations given in the preceding paragraph illustrate the dangers of such an assumption. In any event, the result in this case would not be affected, since the chancellor's ruling can be supported on substantive grounds.

The defendants' position is that the conduct of the plaintiff excused them from any form of further performance under the agreement. They say that the cause of their abrupt eviction of the plaintiff during her absence in Florida was her previous conduct making the occupancy of the adjoining living units impossible. Their argument is that since this situation came about because of the fault of the plaintiff, the breach of the agreement was hers and bars any recovery by her. Therefore, they say, the ruling of the chancellor exclu ded evidence material on this issue erroneously and requires reversal under the auth ority of *Burke* v. *N. P. Clough, Inc.*, 116 Vt. 448, 78 A.2d 483.

■ That case stands for the proposition that where one party sues another at law for damages for breach of contract, he cannot recover if the breach complained of came about through his own act or neglect. This is obviously just in the light of the relief sought; a person ought not to recover damages on the strength of his own wrong. But the law recognizes that where the breach does not go to the whole contract, the situation is different. Then there may be unbarred, enforceable rights in the party causing the breach based on consideration furnished the innocent party without equivalent return. Where the innocent party has received partial performance and substantial benefit it would be unjust to allow him to avoid his contractual duties altogether because the performance of the other party is interrupted short of completion by a breach. This is a doctrine recognized at law, also. *Tichnor Brothers* v. *Evans*, 92 Vt. 278, 279-280, 102 A. 1031, L. R. A. 1918C, 1025.

■ In the case at hand, the plaintiff performed to the extent of furnishing $15,400. Presumably, at law, this would make applicable the doctrine of the *Tichnor* case rather than that of *Burke* v. *N. P. Clough, Inc., supra*. The effect would be to compel the defendants to carry out their duty of furnishing living quarters for the plaintiff and see whatever relief they might be entitled to for her alleged breach in an action for damages. This is because at law impossibility of performance is recognized only in the nature of the thing to be done and not in the inability of the party to do it. *Retail Merchants' Business Expansion Co.* v. *Randall*, 103 Vt. 268, 271, 153 A. 357. Since the defendants elected to terminate the situation by their own act when it became "impossible" as to them, it is difficult to see where they could sustain any claim for damages at law.

■ Moreover, this is an action in equity. The doctrine urged by the defendants would result in a forfeiture of the plaintiff's investment. Such claims are not favored in equity. *Deerfield Lumber Co.* v. *Lyman*, 89 Vt. 201, 209, 210, 94 A. 837.

Nor does the plaintiff's bill seek to enforce that aspect of the agreement to which the defendants claim her fault attaches. They are not being asked to carry out that undertaking, but render the value of the consideration they have received in a form that relieves them of their claimed "impossibility" while measuring their obligation in a form consistent with the original agreement. The chancellor reenforces that with a finding the relations of the parties made specific performance of the living arrangements in the agreement unenforceable. All this had the effect of making the determination of the responsibility for making intolerable joint occupancy of the house immaterial to any issue for decision in this case, as the chancellor ruled. No error appears.

*Judgment Affirmed.*