## Wayne Williams v. Garth Carter

[285 A.2d 735]

No. 138-70

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed October 5, 1971

Motion for Reargument Denied Dec. 13, 1971.

620

*Wilson, Curtis, Bryan & Quinn,* Burlington, for Plaintiff.

*Ryan, Smith & Carbine,* Rutland, for Defendant.

**Barney, J.** The three judge trial court divided on the outcome of this case. The issue involved a contractual claim relating to the use of heavy construction equipment. Part of the claim for work and services performed was admitted by the defendant to be due, but the remainder was denied. The assistant judges found that the defendant defeated the contested aspect of the total liability, while the presiding judge felt he did not. The result was a judgment in favor of the plaintiff only on the undisputed aspect of his claim, with a rejection of the balance. He appeals.

The defendant had an agreement with Sherburne Corporation to clear some areas for roads and lift lines. This work involved removing brush, bulldozing, clearing, grading and, in some areas, the bringing in of gravel fill. To supplement his own equipment the defendant contracted with the plaintiff, a heavy equipment contractor, to bring in two of his bulldozers, with operators, to help in the work to be done. The original arrangement is uncontroverted. The defendant testified that he hired the plaintiff, as a subcontractor, to come down with two bulldozers to work for him. The hourly rate applicable to machines and operators is not questioned. At the time of the engagement there is no question but what both parties viewed it as a contract for work for the duration of the summer. It was

agreed that payments would be made weekly for the work done, at an agreed rate for each machine and operator.

With that arrangement made, the plaintiff moved his equipment, one bulldozer from Morrisville, Vermont, and one from Montpelier, to the job site at the Killington ski area. The same week that the plaintiff started work the defendant failed to be paid by Sherburne Corporation for his previous week's work. This made him unable to pay the plaintiff for his first week's work. Apparently it also triggered repossession of one of the defendant's pieces of equipment by the seller at about the same time.

At some point the plaintiff and defendant had a conversation about pay for the work plaintiff had already done. The defendant's testimony had this conversation taking place at the end of the first week of the plaintiff's operations, and, since the majority findings accept that, we must, also, in review.

The defendant's statement of his own position has several aspects. First, he informed the plaintiff that since Sherburne Corporation had not paid him he could not pay the plaintiff at that time. Second, he wanted the plaintiff to join him in stopping work until the Sherburne Corporation was more cooperative about payments. As he said, ". . . and if I stopped work and set still . . . they were going to change their attitude." Third, at that time the defendant had no idea that the job was over. At no time did he tell the plaintiff that the job was done or that the plaintiff was all done and should leave the job. The only stoppage the defendant had in mind, according to his testimony, was one to implement "a satisfactory agreement to get my money" and he stated to the plaintiff that he, the defendant, wasn't working until he got paid. The plaintiff worked an additional four days, and it is the payment for this period that is in dispute. The defendant has apparently received no pay from Sherburne Corporation for this four days of work.

■■ Of course none of the defendant's statements looked to a termination of the contract between the plaintiff and the defendant. It is clear that, far from being a discharge or dismissal, the defendant was seeking to use his contractual relation with the plaintiff to put pressure on the party with whom

he had contracted. This was nothing the plaintiff had ever agreed to, and he obviously did not assent to it as a new term of his contract. The relationship between Sherburne Corporation and the defendant may have had an effect on the promptness of plaintiff's payment, but, under the agreement as found, he could and did look to the defendant for his money. See *Bachli* v. *Holt*, 124 Vt. 159, 163, 200 A.2d 263 (1964).

The defendant's briefed position with respect to the plaintiff claims that the arrangement constituted a hiring at will under *Mullaney* v. *Goss Company*, 97 Vt. 82, 87, 122 A. 430 (1923), since it was for an indefinite period of time, and therefore authorized a termination at will. This conception he finds strengthened by the agreement for payment on a weekly basis "at the rate of". Furthermore, and somewhat inconsistently, he argues that what occurred was not a firing or discharge, but a lay-off, citing 53 Am.Jur.2d, *Master and Servant* § 29 and 56 C.J.S. *Master and Servant* §§ 29, 31 and 53, in support.

■ Passing the point that the doctrine of the *Mullaney* case is dealing with "indefinite duration" in the sense that the length of its term was no more certain than the length of a man's life, (see *Lambert* v. *Equinox House, Inc.*, 126 Vt. 229, 230, 227 A.2d 403 (1967), we point out that in this case the duration of this contract had a definite and determinable meaning in the minds of both parties. More important, this term and all aspects of the arrangement should properly be tested by general contract law. This is not an employer-employee contract for labor, this is a subcontract made between independent contractors. The evidence is clear that neither party conceived of it as anything else, and the findings of fact sustain this view. Therefore, the law previously cited, involving as it does, considerations peculiar to master-servant relations as contrasted with relationships between independent contractors, has no place here. 53 Am.Jur.2d, *Master and Servant* §§ 3, 4; 56 C.J.S. *Master and Servant* § 3(1)–(9); *Crawford* v. *Lumbermen's Mutual Casualty Co.*, 126 Vt. 12, 17, 220 A.2d 480 (1966); *Rich* v. *Holmes*, 104 Vt. 433, 437–38, 160 A. 173 (1933).

■■ Thus the conclusion of the majority of the court that the contract had been terminated by the defendant is not

supported by the evidence. Nor is there any evidence at all that supports the finding that the defendant stated that he did not sign the slips for the work in question "because he had terminated his contract with the Sherburne Corporation." Although a failure of payment is a justification for ceasing further work, and a default on the part of the defendant, it does not require immediate cessation of activity in the absence of a total disavowal of the contract. *Cass-Warner* v. *Brickman*, 126 Vt. 329, 336–37, 229 A.2d 309 (1967). In the circumstances the plaintiff was entitled to continue performance, subject only to the risk of uncollectibility.

■■ The defendant has advanced a defense of impossibility of performance to avoid payment of the balance. The impossibility he contends for is the failure of his contract arrangement with the Sherburne Corporation. But impossibility of performance is recognized in our law only in the nature of the thing to be done, and not in the inability of the party to do it. *Cushman* v. *Outwater*, 121 Vt. 426, 433, 159 A.2d 89 (1960) ; *City of Montpelier* v. *National Surety Co.*, 97 Vt. 111, 119, 122 A. 484 (1923). As the latter case says, the promissor takes the risk within the limits of his undertaking of being able to perform.

■ Under the facts found, and the applicable law, no supportable justification appears for denying to the plaintiff the additional $1,185.64 found to be due by the findings for work done May 23, 24, 25 and 27, 1968. The conclusion of a majority of the trial court that the defendant was not so liable is inconsistent with the other legally operative facts found that do have evidentiary support. Further, apparently through inadvertence, judgment in favor of the plaintiff against various of the trustees according to their disclosures was not given, but should be. The cause will be remanded for amendment of the judgment order accordingly in these respects.

*Judgment set aside and cause remanded for the entry of a new judgment order in favor of the plaintiff in the principal sum of $2,471.40 together with appropriate interest, and against the trustees according to their disclosures as provided by law.*