## Agway, Inc. of Milton, Vt. v. Joseph and Annette Marotti and Housing Research & Building, Inc.

[540 A.2d 1044]

No. 85-509

Present: **Allen, C.J., Peck, Gibson, Dooley and Mahady, JJ.**

Opinion Filed January 8, 1988

*Doremus, Congleton & Jenkins*, Essex Junction, for Plaintiff-Appellee.

*Daniel S. Triggs*, Milton, for Defendants-Appellants.

**Dooley, J.** This is a building contract case. Defendant Joseph Marotti appeals from a judgment entered below finding him lia-

ble for the cost of certain materials sold by plaintiff, Agway, Inc., to defendant Housing Research & Building, Inc. (Housing) and used by Housing to build a house for defendant Joseph Marotti and his wife Annette Marotti. Agway, Inc. cross-appeals alleging the failure to award judgment against Annette Marotti was error. We affirm as to both appeals.

Defendants Joseph and Annette Marotti purchased from defendant, Housing, a building lot in Milton, Vermont. On the same day, they entered into a contract with Housing under which the corporation would build a house for the Marottis. Contemporaneously, the Marottis secured a loan from the Farmers' Home Administration (FHA) to cover the cost of the lot and the house.

Housing purchased construction materials for the Marotti house as well as others from plaintiff Agway. Initially, plaintiff had one account with Housing, but after experiencing payment delays it set up separate accounts for each job.

At the initiation of the construction in February, 1979, Housing, at the request of plaintiff, asked Joseph Marotti to sign a letter to plaintiff. The heart of the letter was an agreement that two-party checks would be issued to Housing and plaintiff "covering materials for each phase of the work." With this letter in hand, plaintiff provided materials to Housing on credit. By the end of construction at the beginning of May, 1979, the amount due to plaintiff from Housing was approximately $14,800.

Funds were disbursed from FHA during construction. Checks went to Housing after being signed by one or both of the Marottis. No two-party checks were ever issued for materials. Plaintiff first learned of the direct payments to Housing sometime in May of 1979, after the last materials purchase by Housing. Housing never paid plaintiff. Although Joseph Marotti was unaware of this nonpayment, he never took any steps to get two-party checks to plaintiff and Housing.

Plaintiff initiated this action against Housing and the Marottis.* Based on the letter from Joseph Marotti to plaintiff, the trial court awarded judgment for the amount unpaid against Joseph Marotti, as well as against Housing. Defendant Joseph Marotti [hereinafter defendant] appeals the judgment on three grounds:

---

* The Marottis cross-claimed against Housing and joined Jeffrey Sikora, president of Housing, as a third party defendant. The trial court gave third party plaintiff Joseph Marotti a judgment against Jeffrey Sikora. This judgment was not appealed.

(1) the trial court should have found that performance of the agreement contained in the letter was impossible; (2) the agreement in the letter was ambiguous and unenforceable; and (3) the trial court erred in finding that a "set-aside agreement" was used as a customary business practice by plaintiff.

■ Defendant's claim of impossibility is based on his testimony that the check issuance procedure used by FHA precluded issuance of two-party checks. He testified that he learned of the "impossibility" of complying after he sent the letter to plaintiff. It is a defense to a contract action that a party's performance under the contract is "impracticable" because of a fact of which he has no reason to know and the nonexistence of which is a basic assumption on which the contract was made. Restatement (Second) of Contracts § 166 (1981). "Performance may be impracticable because extreme and unreasonable difficulty, expense, injury, or loss to one of the parties will be involved." *Id.* § 261 comment d. Our cases have recognized only a narrow application of this principle. Thus, in *City of Montpelier* v. *National Surety Co.*, 97 Vt. 111, 119, 122 A. 484, 487 (1923), the Court stated the rule as follows:

> To warrant the application of that principle, the impossibility must consist in the nature of the thing to be done and not in the inability of the party to do it. . . . [I]f what is agreed to be done is in nature possible and lawful, it must be done; . . . the promissor takes the risk within the limits of his undertaking of being able to perform.

See also *Williams* v. *Carter*, 129 Vt. 619, 623, 285 A.2d 735, 738 (1971); *Cushman* v. *Outwater*, 121 Vt. 426, 433, 159 A.2d 89, 94 (1960); *Retail Merchant's Business Expansion Co.* v. *Randall*, 103 Vt. 268, 271, 153 A. 357, 358 (1931).

The facts do not bring defendant within the doctrine of impossibility as above defined. The trial court found that there was nothing in the policy of FHA that prohibited issuance of two-party checks. This finding is supported by the testimony of the county supervisor of the FHA, and since it is not clearly erroneous, it must stand. See V.R.C.P. 52(a); *Harlow* v. *Miller*, 147 Vt. 480, 481-82, 520 A.2d 995, 997 (1986). Thus, at best, defendant showed that obtaining two-party checks might be inconvenient and require a special request. He did not show that it was impossible such that he was excused from his performance to plaintiff.

■ Defendant's second claim is that the promise contained in his letter is vague and ambiguous and, thus, could not create a binding obligation to supply two-party checks. The trial court found that the letter created a "set-aside" agreement akin to that involved in *Dartmouth Savings Bank* v. *F.O.S. Assocs.*, 145 Vt. 62, 486 A.2d 623 (1984), and, by its terms, obligated defendant to issue two-party checks to plaintiff and Housing. Defendant argues that the promise found by the trial court is ambiguous because the letter states that two-party checks would be issued to plaintiff and Housing "as cheques are issued to" Housing. Thus, in defendant's view, the letter can be interpreted as making two representations about payments—(a) they would be made to Housing; (b) they would be made both to Housing and plaintiff.

Vagueness, indefiniteness and uncertainty of expression as to an essential contract term can preclude the creation of an enforceable contract. See *Evarts* v. *Forte*, 135 Vt. 306, 310, 376 A.2d 766, 768-69 (1977). Before we can hold that no contract was created, we must attempt to construe the contract to avoid the ambiguity if any exists. A provision in a contract is ambiguous "only to the extent that reasonable people could differ as to its interpretation." *Trustees of Net Realty Holding Trust* v. *AVCO Financial Services of Barre, Inc.*, 144 Vt. 243, 248, 476 A.2d 530, 533 (1984). The contract should be "construed to give effect to the intention of the parties as stated in their writing." See *H.P. Hood & Sons* v. *Heins*, 124 Vt. 331, 336, 205 A.2d 561, 564-65 (1964). It should be "construed, if possible, so as to give effect to every material part." See *Vermont State Colleges Faculty Fed'n* v. *Vermont State Colleges*, 141 Vt. 138, 143, 446 A.2d 347, 349-50 (1982). Further, the acts of one party must receive the construction "as at the time he supposed the other party would give to them, or such a construction as the other party was fairly justified in giving to them . . . ." *Right Printing Co.* v. *Stevens*, 107 Vt. 359, 365, 179 A. 209, 212 (1935).

In this case, the intent of the letter was clear—to give plaintiff security in extending credit to Housing. Plaintiff was clearly justified in reading the letter to say that two-party checks would issue to the extent payment was being made for materials supplied by plaintiff. Where payments were made for labor, profit and materials bought elsewhere, the letter contemplates the use of checks to Housing alone. This is the only construction that gives effect to all parts of the letter. The details of how this would be done were

unimportant. Reasonable persons could construe the letter only one way. It is not ambiguous.

■ Third, defendant argues that the trial court committed error by finding that the use of a "set-aside" agreement was a customary business practice of the plaintiff. Defendant does not relate this alleged error in findings to the conclusions of the court. Although the court does not detail how the contract was formed in this case, the defendant has not attacked the conclusion that there was a contract. There are a number of possible theories on which the court could have found a contract. See, e.g., *Cushman* v. *Outwater*, 121 Vt. at 429, 159 A.2d at 91; see also J. Calamari & J. Perillo, Contracts §§ 2-10, 2-19 (3d ed. 1987). Since there is no history of dealing between the parties, the question of whether the agreement was a customary business practice is irrelevant to the formation of the contract or to defendant's liability. Thus, the finding on this question is surplusage and of no effect. See *Greenberg* v. *Hadwen*, 145 Vt. 112, 115, 484 A.2d 916, 918 (1984). Even if the finding is erroneous, there is no error in the judgment.

■ Plaintiff has cross-appealed because the court did not find Annette Marotti liable for the judgment. Plaintiff concedes that Annette Marotti is not liable under the letter sent to plaintiff by Joseph Marotti. Annette Marotti did not learn of the letter until the house was built and plaintiff was trying to collect its bill for materials. Instead, plaintiff asserts that Annette Marotti is liable under 15 V.S.A. § 67, which provides in pertinent part:

> Real estate . . . held and owned by husband and wife by the entirety, are made chargeable during the lifetime of the husband for the debts contracted by him for the necessary upkeep of such property, in the same manner and to the same extent as if owned and held by him in his sole name.

The problem with plaintiff's argument is that the statute governs only what property is reachable to enforce a judgment. It does not impose liability on a wife for the husband's debts. Thus, it can not support a personal judgment against Annette Marotti as sought by plaintiff.

At the commencement of this action, plaintiff sought and obtained an attachment on the real estate owned by the Marottis as husband and wife. The parties can still litigate whether the attached property is available to respond to the judgment against Joseph Marotti pursuant to 15 V.S.A. § 67.

*Affirmed.*