2007 VT 39

## Bernard G. Record and Anna A. Record a/k/a Ann F. Record v. G. Steven Kempe and Lucy Mary Kempe

[928 A.2d 1199]

No. 05-224

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed May 4, 2007

Motion for Reargument Denied June 8, 2007

18

*L. Raymond Massucco* of *Massucco Law Offices, P.C.*, Bellows Falls, for Plaintiffs-Appellees.

*Herbert G. Ogden* of *Ogden Law Offices, P.C.*, Rutland, for Defendants-Appellants.

¶ 1. **Skoglund, J.** Defendants Mr. & Mrs. Kempe appeal a jury verdict in favor of plaintiffs Mr. & Mrs. Record on plaintiffs' claim that defendants breached a contract for the sale of plaintiffs' home. Plaintiffs asserted they were entitled to retain defendants' deposit as authorized in the purchase and sale contract because defendants breached the contract. Defendants countered that they were entitled to return of the deposit because it was plaintiffs, in fact, who had breached the contract for sale. The jury found in favor of plaintiffs. We affirm.

¶ 2. In June 2001, defendants contracted to purchase plaintiffs' home and made a deposit of $21,600. The contract provided that if defendants discovered a defect in the title, defendants were required to notify plaintiffs, and plaintiffs would then have a minimum of thirty days from the date of notice to cure the defect. Specifically, the contract provided:

> Purchaser . . . shall notify Seller in writing prior to the date set for closing of the existence of any encumbrances or defects which are not excepted in this Contract . . . . In such event, Seller shall have an additional .thirty (30) days from the time Seller receives such notice to remove the specified encumbrances or defects . . . . If, at the expiration of 30 days from the receipt of such notice or on the date set for closing, whichever is later, Seller is unable to convey marketable title free and clear of such encumbrances and defects, Purchaser may terminate this Contract, and, if so, shall receive back all deposit money

and may, in addition, pursue all legal and equitable remedies provided by law.

¶ 3. Three days before the scheduled closing date, defendants' lawyer discovered a cloud on the title. The existence of the cloud on title is not disputed.[1] Defendants' lawyer telephoned plaintiffs' lawyer, described the title defect, and declared that his clients would buy the property only if the defect was cured. The next day, defendants' lawyer faxed a note to plaintiffs' lawyer which stated in total: "Buyers do not want to close with matter unresolved — 60 day contract extention [sic]." In addition, plaintiff Mrs. Record testified at trial that defendant Mr. Kempe specifically represented to her that defendants were willing to extend the contract for sixty days. The day after the lawyers first discussed the problem with the title, plaintiffs' attorney left for vacation, returning to Vermont thirteen days into the cure period.[2] Sixteen days into the cure period, defendants sent a letter by certified mail to plaintiffs purporting to cancel the contract due to the cloud on the title and also because they were unwilling to pay the two extra interest payments that would come due on their bridge loan during a sixty-day delay.

¶ 4. Plaintiffs brought this action, asserting their right to retain defendants' deposit because defendants had breached the contract. Defendants counterclaimed, alleging that plaintiffs breached the contract by failing to cure the title defect, and that defendants were entitled to recover their deposit as a result.

¶ 5. One of the issues the parties focused on at trial was whether plaintiffs would have been able to cure the title defect in the time allotted. In written discovery to plaintiffs, defendants asked plaintiffs to admit that they could not have accomplished a timely cure regardless of whether the grace period was thirty or

---

[1] The nature of the cloud on the title is as follows. Plaintiffs had purchased the property from the Fishers, who had purchased it from Nellie Walker. Circumstances surrounding an earlier conveyance by Walker of a seven-acre portion of the property could support an argument that the Fishers held title to that portion only by operation of adverse possession. In particular, while the land records indicated that Walker conveyed the subject property to the Fishers in 1944, a 1925 deed indicates that seven acres of the parcel of the land possessed by Walker had been reserved in a deed of conveyance to a Herbert Fletcher. No further mention of these seven acres is found in the deed of conveyance to the Fishers.

[2] The parties calculate this period slightly differently, but this difference is not material to resolution of this appeal.

sixty days. Plaintiffs failed to answer the discovery request, and defendants moved for partial summary judgment, relying in part on plaintiffs' implied admission that they could not have cured the defect in time. The court granted plaintiffs' request to withdraw the admission and denied summary judgment.

¶ 6. Defendants later moved to prevent plaintiffs from introducing evidence tending to demonstrate that the parties had made an oral modification to the contract to extend the cure period from thirty to sixty days. The court also denied this motion, instead placing the issue of oral modification before the jury.

¶ 7. The jury returned a verdict in favor of plaintiffs, and the court awarded plaintiffs their attorneys' fees. Defendants filed this appeal. On appeal, defendants assert that they should have been granted summary judgment based on plaintiffs' implied admission that they could not cure the title defect in the time allowed. Defendants also argue that the superior court erred by instructing the jury that defendants were required to prove that it would be "impossible" for plaintiffs to cure the title defect in time. Instead, defendants allege, they were required to prove only that plaintiffs' performance was "highly unlikely." Defendants allege further error in the superior court's failure to instruct the jury that, in order for any oral modification of the contract to be valid, plaintiffs had to show they relied on the modification to their detriment. Finally, defendants claim that plaintiffs' lawyer should not have been permitted to both serve as a lawyer and a witness during the trial.[3] We address these in turn.

I.

¶ 8. Defendants argue that, because plaintiffs had failed to timely respond to defendants' requests for admissions, plaintiffs impliedly conceded that they could not have cured the defect in title within either the thirty days provided in the purchase and sale contract or the sixty-day period allegedly created by oral modification. See V.R.C.P. 36(a) (providing that an issue subject to a request for admission is deemed admitted if the party to whom discovery is directed does not answer or object to the request within thirty days). The superior court granted plaintiffs' request

---

[3] Defendants assert in passing that the award of attorneys' fees was excessive, but we do not address this issue as defendants offer no substantive argument on the point in their appellate brief.

to withdraw the implied admission and denied defendants' motion for summary judgment. Defendants argue that this was error.

¶ 9. While we review de novo the legal conclusion underlying a decision to grant or deny summary judgment, defendants do not directly attack the merits of the summary judgment ruling. Rather, defendants take issue with the superior court's decision to allow plaintiffs to withdraw their discovery response.[4] Discovery rulings such as this are discretionary, and discretionary rulings "are not subject to review if there is a reasonable basis for the court's action." *Cliche v. Fair*, 145 Vt. 258, 261, 487 A.2d 145, 148 (1984) (quotations omitted). Therefore, to support a claim of error defendants must show that "the court failed to exercise its discretion, or exercised it for reasons clearly untenable or to an extent clearly unreasonable." *Id.*

¶ 10. Under Vermont Rule of Civil Procedure 36(b), the court has discretion to allow withdrawal of an admission if "the presentation of the merits of the action will be subserved" by allowing withdrawal and the party who obtained the admission "fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits." The court noted that, while plaintiffs had changed counsel right around the time the discovery responses were due, which resulted in some confusion, plaintiffs failed to explain why they still did not respond when defendants pointed out their oversight in a letter nearly two months later. Nonetheless, the court allowed withdrawal because the facts that would be deemed admitted were "both key issues," such that "denying Plaintiffs' motion would essentially preclude a determination of the substantive merits of the case." Further, the court found that defendants had failed to identify discovery that they would have pursued had they not relied on the admission; rather, defendants admitted they had continued with their original discovery plan because they antici-pated that plaintiffs would ultimately seek to withdraw the admission. Thus, there was no showing of prejudice. While em-phasizing that plaintiffs' delay in responding was not excusable,

---

[4] Once the implied admission was permitted to be withdrawn, there was clearly a factual dispute as to whether plaintiffs could have cured title in time which precluded summary judgment. See V.R.C.P. 56(c) (summary judgment appropriate only where there are no genuine issues of material fact and moving party is entitled to judgment as matter of law); *Greene v. Stevens Gas Serv.*, 2004 VT 67, ¶ 9, 177 Vt. 90, 858 A.2d 238 (same).

the court correctly noted that "excusable neglect is not a requirement for allowing withdrawal of admissions."

¶ 11. These conclusions provided a sound basis for the exercise of the court's discretion. We find no error in the court's decision to permit withdrawal of the admissions and deny defendants' motion for summary judgment.

## II.

¶ 12. Defendants also argue that the superior court erred in its instructions to the jury setting forth their defense. Defendants' theory at trial was that they were entitled to cancel the contract prematurely because plaintiffs would not have been able to cure the title defect in time, and therefore it would have been futile for defendants to wait until the end of the cure period to cancel the contract. In support of this notion, defendants cited *Hall v. Hodgdon*, 114 Vt. 63, 69, 39 A.2d 195, 199 (1944), for the general proposition that "the law does not require one to do a useless act." In their motion for summary judgment, defendants couched their theory in the following terms: "[A] demand for performance is unnecessary where there has been a prior absolute refusal or repudiation, or where the party from whom performance is due has placed it out of his power to perform, or has demonstrated his inability to perform." (quoting 17A C.J.S. *Contracts* § 478 (1963)). Along these lines, defendants requested that the jury be instructed that defendants had the right to cancel "if it was reasonably clear that [plaintiffs] could not show legal ownership within the agreed-upon time."

¶ 13. In formulating the jury instruction, however, the superior court relied on cases invoking the related but distinct doctrine of impossibility of performance. That doctrine applies to excuse a party's breach of contract where that party's own performance has become impossible due to an unanticipated change in circumstances. See, e.g., *Agway, Inc. v. Marotti*, 149 Vt. 191, 193, 540 A.2d 1044, 1046 (1988) (recognizing defense of impossibility of performance). Ultimately, the superior court gave the following instruction to the jury:

> If you find that a reasonable person under the same circumstances, having all of the information defendants and their attorneys had at the time, would have believed that it would have been impossible for plaintiffs to have

cleared their title within the period of time agreed, you may find that defendants were justified in withdrawing from the contract. . . . [Y]ou must find that defendants withdrew from the contract for this reason.

Defendants objected to this formulation of the instruction, pointing out that the issue was not whether defendants could be excused from performance under the contract, but rather whether plaintiffs would be able to meet their contractual obligations — namely, providing clear title to the property.[5] Defendants argued that their theory of the case — which defendants referred to as "futility" — was different than the concept of impossibility articulated by the court in its instructions.

¶ 14. On appeal, defendants reiterate their argument that the superior court's instruction erroneously confused the concepts of "futility" and "impossibility." Defendants further argue that the instruction was in error because defendants were required to prove only that it was "highly unlikely" — not "impossible" — for plaintiffs to clear title in time. A party who claims error in the jury charge has the burden of establishing both that the charge was wrong and that prejudice resulted from that error. *Mobbs v. Cent. Vt. Ry.*, 155 Vt. 210, 218, 583 A.2d 566, 571 (1990). In reviewing jury instructions, we look at them in their entirety. *Winey v. William E. Dailey, Inc.*, 161 Vt. 129, 143, 636 A.2d 744, 753 (1993). If the charge as a whole "breathes the true spirit and doctrine of the law and there is no fair ground to say the jury has been misled, there is no ground for reversal." *Id.* (quotations omitted). The instruction was a correct statement of the law and an accurate reflection of defendants' theory of the case.

¶ 15. Although defendants referred to their theory as the doctrine of "futility," their citations and arguments both in the superior court and on appeal make clear that defendants' theory

---

[5] Specifically, in their supplemental submission in support of their proposed jury instructions, defendants asserted that:

> The three authorities cited by the Court are inapposite because they say when a promisor may be excused from doing what he contracted to do on the grounds that it is impossible to do it. . . . The Kempes' actual defense, futility, is different. It says the Kempes are excused from waiting the 30 days to see whether the Records could clear the title that still existed on the agreed closing date, because there was little or no chance that the Records could do it in 30 days.

of the case is grounded in the more familiar and contemporary contract doctrine of repudiation. When one party repudiates a contract, the other party is discharged from her duties under the contract and may bring an action for breach. See *Lowe v. Beaty*, 145 Vt. 215, 218, 485 A.2d 1255, 1257 (1984) ("A repudiation before the time for performance constitutes an anticipatory breach of the agreement."); Restatement (Second) of Contracts § 253 (1981). A party repudiates a contract when that party explicitly or implicitly represents that he cannot or will not perform his obligations under the contract. This can be accomplished by either:

> (a) a statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damages for total breach . . . , [or]

> (b) a voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach.

Restatement (Second) of Contracts § 250. Implicit repudiation is also referred to as "apparent impossibility." See, e.g., Restatement (Second) of Contracts § 250 cmt. c. ("[A] party's act must be both voluntary and affirmative, and must make it actually or apparently impossible for him to perform.").

¶ 16. While defendants attempt to disavow the repudiation framework on appeal, it is beyond argument that this was their position at trial — regardless of the name they attached to their defense. First, as stated above, defendants referenced repudiation in their motion for summary judgment (arguing that, "a demand for performance is unnecessary where there has been a prior absolute refusal or repudiation, or where the party from whom performance is due has placed it out of his power to perform, or has demonstrated his inability to perform") (quoting 17A C.J.S. Contracts § 478 (1963)). Second, defendants requested a jury instruction stating that defendants had the right to cancel the contract "if it was reasonably clear that [plaintiffs] could not show legal ownership within the agreed-upon time." Third, the authorities cited by defendants set forth the doctrine of repudiation. For example, *Drew v. Bowen*, an early case, stands for the proposition that "where the nature of the defect of title is such that the vendor cannot acquire it, the purchaser may rescind and put an end to the contract to purchase, even before the day for the

delivery of the deed arrives." 102 Vt. 124, 128, 146 A. 254, 256 (1929). Similarly, the section of Corbin relied on by defendants pertains to "Repudiation or Other Total Breach," and explains that repudiation may take the form of "express words or . . . an act that makes performance by the repudiator apparently impossible or very improbable." 9 A. Corbin, Contracts § 977, at 815-16 (1979).

¶ 17. As Corbin explains, a repudiation occurs "[i]f the promisor so acts as to make subsequent performance by him so difficult or expensive that it is reasonable for the other party to believe that the promisor intends not to perform." *Id.* § 984, at 840. This is consistent with Vermont's case law interpreting the term "impossible" in the context of a defense of impossibility of performance. We have previously equated the term "impossibility" with the term "impracticability" and defined both as involving " 'extreme and unreasonable difficulty, expense, injury, or loss to one of the parties.' " *Agway*, 149 Vt. at 193, 540 A.2d at 1046 (quoting Restatement (Second) of Contracts § 261 cmt. d).

¶ 18. Thus, the concept of implicit repudiation[6] invoked by defendants revolves on the same concept of practical impossibility as the related defense of impossibility of performance. In one instance, the breaching party excuses his breach by claiming that circumstances made his own performance impossible. In the other, the breaching party seeks to excuse his breach by claiming that it was apparent the other party's performance was no longer possible. The superior court did not err in its instruction because impossibility of one's own performance and the apparent impossibility of the other party's performance are but two sides of the same doctrinal coin. There is nothing to suggest that the term "impossibility" — which we have previously equated with the term "impracticability" — has a different meaning in the context of another party's contractual performance. *Id.* at 193, 540 A.2d at 1046 (quoting Restatement (Second) of Contracts § 261 cmt. d). There is no basis in case law or logic to apply a less stringent

---

[6] Defendants do not argue — nor could they, based on the evidence — that plaintiffs explicitly repudiated the contract by stating that they would not or could not perform.

standard of impossibility (that performance is "highly unlikely") in the latter case.[7]

¶ 19. Defendants argue in the alternative that, even accepting the superior court's instruction, the evidence at trial met the standard on which the jury was instructed: that it would have been impossible for plaintiffs to clear the title within the time allotted. In reviewing the jury's verdict, we view the evidence in the light most favorable to the verdict, excluding the effect of modifying evidence, and will sustain the verdict if it is fairly and reasonably supported by any evidence. *McGee Constr. Co. v. Neshobe Dev., Inc.*, 156 Vt. 550, 556, 594 A.2d 415, 418 (1991). There was ample evidence from which the jury could have reasonably concluded that defendants failed to prove apparent impossibility.

¶ 20. As we have previously recognized, while the term "impossibility" has been expanded to include the concept of "impracticability," both terms are narrowly defined. See 30 Williston on Contracts § 77:1, at 277 (4th ed. 2004); see also Restatement of Contracts § 454 (1932) ("[I]mpossibility means not only strict impossibility but impracticability because of extreme and unreasonable difficulty, expense, injury or loss involved."). "While impracticability embraces situations short of absolute impossibility, mere increase in difficulty is not enough." 30 Williston, § 77:1, at 278. Thus, it is a "strict standard" that excuses nonperformance only when performance would cause "extreme, unreasonable, and unforeseeable hardship due to an unavoidable event or occurrence." *Id.* at 279; see also *Agway*, 149 Vt. at 193, 540 A.2d at 1046.

¶ 21. In light of this standard and the evidence presented in this case, the jury could not have reasonably concluded that defendants were justified in deciding that plaintiffs' performance was "apparently impossible." Here, the bare fact that the parties' contract anticipated the possibility of a cloud on title and set a specific time period in which to cure demonstrates that such a contingency was neither unforeseeable nor extreme. See 30 Williston, § 77:1, at 279 (impossibility exists only where hardship is unforeseeable and extreme). Moreover, not even defendants' own expert, who was their attorney at the time of the underlying

---

[7] We also note that a "highly unlikely" standard substantially diverges from the language that defendants themselves suggested in their proposed jury instructions.

contract between the parties, would testify that performance was impossible. Rather, he went only so far on direct examination as to claim that "it was unlikely that [plaintiffs] were going to be able to resolve this within the thirty day period." According to his testimony, because of problems plaintiffs' attorney was having in getting the names of the potential parties to a probate proceeding, "we told our clients that we thought that this was not going to be completed in thirty days." The attorney acknowledged that "you can move pretty quickly" if you get the consents from the parties, but added that it "seemed unlikely" that plaintiffs could do that. When pressed on direct examination to quantify how unlikely, the best that the attorney could offer from defendants' perspective was "pretty unlikely."

¶ 22. We have already upheld the trial court's charge instructing the jury that it could find that defendants were justified in withdrawing from the contract if "a reasonable person under the same circumstances, having all of the information defendants and their attorneys had at the time, would have believed that it would have been impossible for plaintiffs to have cleared their title within the period of time agreed." Defendants' evidence failed to meet this standard. Indeed, based on the evidence presented by defendants, the jury could have concluded only that defendants' cancellation of the contract sixteen days into the cure period was premature.[8] This is true regardless of whether plaintiffs had thirty or sixty days to cure, and thus defendants' arguments regarding failure of the evidence of an

---

[8] The evidence at trial showed that, at the time defendants withdrew from the contract, plaintiffs were working to cure the alleged title defect. Assuming that the shorter, thirty-day time period would have applied, plaintiffs had until September 29 or 30 to accomplish the cure. Assuming that the jury concluded that the parties had extended the cure period to sixty days, defendants would have had until nearly the end of October to do so. On September 14, plaintiffs' attorney filed a petition in probate court pursuant to 14 V.S.A. § 1801 to clear the discrepancy in the title. The petition sought a determination that the heirs of Nellie Walker were not in possession of the subject real estate and were not entitled to maintain a suit for possession thereof. Included was a motion for service by publication supported by an affidavit that said, after diligent inquiry, plaintiffs could not locate all the heirs of Nellie Walker. By October 1, plaintiffs' attorney had notified the probate court that all heirs were identified and service by publication was unnecessary as the heirs could be notified directly. Consent of Judgment forms were sent to each heir along with the petition. Nonetheless, defendants asserted that it was highly unlikely that plaintiffs could clear the title within thirty days and that to wait until the thirty days had actually expired would be futile.

extension of the cure period are not determinative of the outcome of this issue.[9]

## III.

¶ 23. Finally, defendants argue that the trial court erred in denying their motion to disqualify plaintiffs' attorney, which was grounded on defendants' intention to call him as a witness. In making this argument, defendants rely on Vermont Rule of Professional Conduct 3.7, which permits a lawyer to be both a witness and an advocate at trial only when the testimony offered addresses an uncontested issue or "disqualification of the lawyer would work substantial hardship on the client." We find this argument unavailing for the following reasons.

¶ 24. The day before trial, the superior court denied defendants' motion to disqualify plaintiffs' attorney because (1) defendants made their motion orally minutes before the jury draw even though they had known for most of the two-year discovery phase of the litigation that plaintiffs' attorney would be testifying in the

---

[9] Defendants present a number of challenges to the superior court's evidentiary rulings that we do not address for the reasons stated below. First, defendants argue that the court erred in excluding evidence of probate rules and procedures that would have demonstrated that it was impossible for plaintiffs to cure the defect in title in either thirty or sixty days. Defendants do not demonstrate, however, how this ruling prejudiced presentation of their case, as defendants' attorney explained the probate process to the jury in detail. Second, defendants argue that it was error for the court to exclude evidence of what actually transpired following their cancellation of the contract, that is, whether plaintiffs were successful in their efforts to clear the title and how long this process took. In light of the applicable standard — specifically, whether a reasonable person with the same information as that available to defendants would have believed it impossible for plaintiffs to clear the title in time — the court was correct to exclude the evidence as irrelevant. The standard requires the jury to examine the reasonableness of defendants' decision in light of the information available to defendants at the time they decided to cancel the contract, not information that came to light only later. Third, defendants argue that the court erred in admitting certain evidence related to the issue of reliance. The question of reliance goes to the issue of whether the cure period was verbally extended. Because the jury's verdict can be affirmed regardless of whether the jury found that there had been a verbal extension of the cure period, we need not address those arguments related to the verbal extension. Finally, defendants contend it was error to exclude evidence that they were financially capable of purchasing the house despite their decision to cancel the contract. As defendants conceded, such evidence would go to their motivation for canceling, not the reasonableness of their beliefs regarding whether plaintiffs could perform, and is therefore not relevant to any element of their defense.

case; (2) defendants had ample time to seek relief from the court on this issue, but failed to do so; (3) defendants themselves intended to call (and in fact did call) plaintiffs' attorney as a witness to support their theory that plaintiffs could not have cured the defect in title within the time frame allowed by the parties' contract; (4) plaintiffs' attorney made reasonable accommodations to address the situation and had informed defendants of those accommodations; and (5) defendants had failed to make any proffer whatsoever as to what the substance of the testimony would be, how important the testimony was to their case, or whether the testimony would concern disputed facts.

¶ 25. Even if we determined that the trial court abused its discretion by denying defendants' motion under these circumstances, we conclude that defendants have failed to demonstrate any prejudice resulting from the ruling. As we held above, defendants failed to offer sufficient evidence for the jury to conclude that an objective person could believe it was impossible for plaintiffs to cure the title defect within the allocated time. Thus, the evidence solicited from plaintiffs' counsel was unnecessary and superfluous. Accordingly, defendants were not prejudiced by its admission in violation of the ethical code.

*Affirmed.*